EXHIBIT 1

 CT Corporation

**Service of Process Transmittal**
09/13/2017
CT Log Number 531922044

**TO:**  Jean Kelly
Progressive Casualty Insurance Company
Corporate Law Department, 6300 Wilson Mills Rd. N72
Mayfield Village, OH 44143-

**RE:**  **Process Served in Oklahoma**

**FOR:**  Progressive Northern Insurance Company  (Domestic State: WI)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Rachel Curtis, Individuallty and on Behalf of Person Similarly Situated, Pltf. vs. Progressive Northern Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Petition, First Interrogatories and Request |
| **COURT/AGENCY:** | Oklahoma County District Court, OK<br>Case # CJ20175046 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Oklahoma City, OK |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 09/13/2017 postmarked on 09/12/2017 |
| **JURISDICTION SERVED :** | Oklahoma |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Jason Waddell<br>Jason Waddell, PLLC<br>222 NW 13th Street<br>Oklahoma City, OK 73103<br>405-232-5291 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/13/2017, Expected Purge Date: 09/18/2017<br><br>Image SOP<br><br>Email Notification,  Paula Stewart  paula_stewart@progressive.com<br><br>Email Notification,  Deborah Fisk  deborah_fisk@progressive.com<br><br>Email Notification,  Jean Kelly  JEAN_A_KELLY@Progressive.com<br><br>Email Notification,  Bonnie Thomas  bonnie_thomas@progressive.com<br><br>Email Notification,  Rachael Hembree  rachael_hembree@progressive.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>1833 South Morgan Road<br>Oklahoma City, OK 73128 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
09/13/2017
CT Log Number 531922044

**TO:**   Jean Kelly
Progressive Casualty Insurance Company
Corporate Law Department, 6300 Wilson Mills Rd. N72
Mayfield Village, OH 44143-

**RE:**   **Process Served in Oklahoma**

**FOR:**   Progressive Northern Insurance Company  (Domestic State: WI)

**TELEPHONE:**          214-932-3601

Page 2 of  2 / SP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**JOHN D. DOAK**
Insurance Commissic
Oklahoma Insurance Depart
5 Corporate Plaza
3625 NW 56th Street, Suite ...
Oklahoma City, OK 73112-4511

7016 2140 0000 3510 9854

The Corporation Company
1833 South Morgan Road
Oklahoma City, OK 73128

NEOPOST
09/12/2017
US POSTAGE $006.62°

FIRST-CLASS MAIL

ZIP 73112
041M11276941

GOVERNOR
MARY FALLIN

INSURANCE COMMISSIONER
JOHN D. DOAK



## INSURANCE COMMISSIONER
### State of Oklahoma

September 12, 2017

PROGRESSIVE NORTHERN INSURANCE
COMPANY
6300 WILSON MILLS RD W33
MAYFIELD VILLAG OH  44143

RE:  CJ20175046
     In the District Court in OKLAHOMA
     State of Oklahoma
     RACHEL CURTIS
               vs
     PROGRESSIVE NORTHERN INSURANCE
     COMPANY

Dear Sir or Madam:

Enclosed is a copy of the above captioned summons
served on the Insurance Commissioner as designated agent
for service of process of foreign insurance companies doing
business in the State of Oklahoma (36 O.S. section 621(B)).

Sincerely,

JOHN DOAK
Insurance Commissioner

Maria Torres                 Legal Department

dp/enclosure

THE CORPORATION COMPANY
1833 SOUTH MORGAN ROAD
OKLAHOMA CITY   OK  73128

(handwritten) 6880

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

OKLAHOMA INSURANCE DEPARTMENT
RECEIVED
SEP 1 2 2017
Legal Division

| | | |
|---|---|---|
| RACHEL CURTIS, Individually and on Behalf of Persons Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.  CJ-2017-5046 |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## SUMMONS

**TO THE ABOVE NAMED DEFENDANT:** PROGRESSIVE NORTHERN INSURANCE COMPANY

You have been sued by the above-named Plaintiff and you are directed to file a written Response to the attached Petition in the office of the Court Clerk in the County named above **within twenty (20) days** after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your Response must be delivered or mailed to the attorney for Plaintiff or to the Plaintiff if not represented by an attorney.

**Unless you respond to the Petition within the time stated, judgment will be rendered against you for the relief demanded in the petition, with costs of the action.**

Issued this _7th_ day of _September_, 2017.

RICK WARREN, Court Clerk

By:_____
Deputy Court Clerk

Jason Waddell OBA #30761
222 NW 13th St.
Oklahoma City, OK 73103
405-232-5291 Phone
405-708-7871 Fax
Jason@JasonWaddellLaw.com

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR RESPONSE. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT A RESPONSE MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

This Summons AND Petition were served on this_____ day of _____, 2017.

_____
**Name of Person Serving Summons**

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP − 7 2017

RICK WARREN
COURT CLERK
73_____

| | | |
|---|---|---|
| RACHEL CURTIS, Individually and on Behalf of Persons Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | CJ-2017-5046 |
| Defendant. | ) ) | |

## PETITION

COMES NOW Plaintiff, Rachel Curtis, individually and on behalf of other persons and a class of those similarly situated ("Plaintiff"), and for her cause of action against Defendant, Progressive Northern Insurance Company ("Progressive"), states as follows:

### PARTIES

1. Rachel Curtis, who is of the age of majority, domiciled in Oklahoma County, State of Oklahoma, and who further appears as Plaintiff and on behalf of those individuals similarly situated as Proposed Class Representative.

2. Defendant is an insurance company domiciled in the State of Wisconsin. At all times relevant hereto, Progressive was in the business of promoting, marketing, and underwriting automobile insurance policies in the State of Oklahoma.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this subject matter and class action pursuant to 12 O.S. §2023.

4. Venue in this case is founded on 12 O.S. §137. Pursuant to this section, an action against a foreign corporation may be brought where the cause of action or part thereof arose. The

cause of action of the named class representative arose in Oklahoma County.  Defendant, Progressive Northern Insurance Company, is doing business in Oklahoma, and received substantial compensation and profits from the sale of automobile insurance policies in Oklahoma.

### PRELIMINARY STATEMENT AND FACTUAL ALLEGATIONS

5. Oklahoma's Insurance Code and Statutes provide the standards for evaluating and paying automobile total loss claims. For first party claims, the Insurer must follow a set of guidelines that helps it determine the actual cash value or fair market value using comparable vehicles in the local market area. In a total loss claim, the fair market value of the vehicle is determined as listed in the current National Auto Dealers Association ("NADA") guidebook or other similar guidebook or the actual cash value, whichever is greater.[1]

6. The Plaintiff and class representative purchased a policy of insurance from Progressive Northern Insurance Company, Policy No. 912550710, within the applicable period.  She filed a total loss claim during this period.

7. The applicable policy language as contained in Progressive Policy No. 912550710:

> LIMITS OF LIABILITY
> 1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
> a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
> 2. Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions:
> g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

---

[1] 36 O.S. §1250.8; 47 O.S. §1111

8. Since at least 2010, Progressive has used a program by JD Power called "Mitchell WorkCenter Total Loss" to calculate the value of a total loss vehicle. This program consistently undervalues the total loss amount due to policy holders by failing to use "comparable vehicles" as required by the Oklahoma Insurance Code, and fails to determine the actual cash value as determined by the market value as contained in the relevant policy language and applicable law. Plaintiff asserts this undervaluation is a common occurrence among Progressive insureds, causing millions of dollars in underpaid claims.

9. On or about June 8, 2017, Plaintiff while driving her 2006 Chevrolet Malibu which contained a 4-cylinder motor (hereafter "Malibu 4-cylinder") was involved in an accident resulting in a total loss claim. The Malibu 4-cylinder had approximately 97,923 miles at the time of the total loss.

10. On or about June 13, 2017, Progressive, utilizing the Mitchell WorkCenter program/software paid $4,048.85 to settle Plaintiff's total loss to her Malibu 4-cylinder on Progressive claim no. 17-3529731-01.

11. On or about June 13, 2017, Plaintiff purchased another 2006 Chevrolet Malibu with a 6-cylinder motor (hereafter "Malibu 6-cylinder").

12. On or about July 4, 2017, Plaintiff while driving her Malibu 6-cylinder was involved in an automobile accident which resulted in a total loss claim no. 17-4035104-01. The Malibu 6-cylinder had less than 67,000 miles at the time of the total loss.

13. On or about July 5, 2017, the Defendant determined that the actual cash value of Plaintiff's Malibu 6-cylinder was $4,282.54 utilizing the Mitchell WorkCenter program.

14. Plaintiff objected to the "comparable vehicles" that Defendant used to determine the actual cash value of her July 4th total loss. Specifically, the Plaintiff's vehicle had less than 67,000 miles at the time of loss while the five vehicles that Defendant identified as "comparable vehicles" had mileages of 97,509; 140,334; 163,391; 175,247; and 187,955 respectively. At least one of the "comparable vehicles" utilized by Defendant had been reported as a "total loss."

15. On or about July 6, 2017, the Plaintiff provided the Defendant with a printout copy of a NADA value for her Malibu 6-cylinder which showed a value of $6,125.00, further stating that this amount would be acceptable as settlement for the loss.

16. On July 7, 2017, Defendant provided Plaintiff with their own NADA printout showing Plaintiff's vehicle was valued at $5,912.00. However, the Defendant refused to pay Plaintiff the NADA value of Plaintiff's vehicle or to adjust their valuation of Plaintiff's vehicle.

## COUNT I: BREACH OF CONTRACT

17. Plaintiff purchased and was the named insured issued on Policy No. 912550710 which insured the Plaintiff's vehicle from the subject loss by comprehensive and collision coverage.

18. Defendant agreed to pay Plaintiff for the reasonable market value of her vehicles if it was as total loss vehicle, based upon the applicable policy language.

19. On or about June 13, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 4-cylinder was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

20. On or about July 4, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 6-cyliner was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

21. That all premiums on the Policy were paid and Plaintiff complied with all provisions of her Insurance Policy.

22. Pursuant to the policy of insurance written and issued to Plaintiff, Defendant had a duty to pay the Plaintiff's losses.

23. That Plaintiff made due demand on Defendant for payment of the policy benefits. Defendant failed to pay the reasonable value for the Malibu 4-cylinder claim. Defendant has refused to pay the benefits due for the Malibu 6-cylinder claim.

24. Defendant wrongfully failed and refused to properly pay Plaintiff's losses and has breached the contractual duty to Plaintiff.

25. Plaintiff is informed, and therefore believes, that Defendant's practice of failing to properly pay auto property claims utilizing Mitchell WorkCenter to evaluate said claims is a practice that has been employed by Defendant for years and involves underpayment of thousands of claims.

26. As a direct result of the action of Defendant, Plaintiff and all other similarly situated insureds have been damaged by Defendant's breach of contract.

## COUNT II: FRAUD/CONSTRUCTIVE FRAUD/DECEIT

27. Plaintiff adopts and re-pleads paragraphs 1-26, above, and further alleges as follows:

28. Defendant utilizes a computer program known as Mitchell WorkCenter to evaluate and adjust total loss claims in Oklahoma and various jurisdictions around the country.

29. The Mitchell WorkCenter computer program utilizes a set of reference values that results in outcome oriented, unreasonably low evaluations of total loss claims.

30. Progressive represents to its first party insureds, either directly or indirectly through their agents, that it uses "comparable vehicles" to determine the value of the total loss vehicle. Instead, Progressive employs various schemes by utilizing the Mitchell WorkCenter program to select the 'vehicles' in a manner which allowed them to reduce the calculated value they paid for "total loss vehicles." By affirmatively representing to the insured that they were using comparable vehicles, when Progressive knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

31. Progressive falsely represented to their insureds, including Plaintiff, that the Mitchell WorkCenter evaluation represents fair and reasonable evaluations of total loss claims when they know or should know otherwise.

32. Progressive intentionally and knowingly made false statements to Plaintiff about the value of her cars to induce her to accept a reduced amount on her insurance claims.

33. Progressive either knows or should have known that most insureds, including Plaintiff, seeking insurance benefits are vulnerable, less skilled in the art of negotiation and have neither time nor the resources to engage in protracted litigation against Defendant to obtain the fair value of their total loss claims.

34. Progressive either knows or should know that for the reasons outlined above, many insureds never challenge Progressive's evaluation of their total loss claims and thus, never receive the full value of their claims.

35. On or about July 7, 2017, Plaintiff challenged the evaluation of her Malibu 6-cylinder total loss claim, and Progressive intentionally and knowingly made false statements to Plaintiff that they would not be able to pay her more than shown on the Mitchell WorkCenter evaluation.

36. For the reasons set forth above, Progressive's systematic, company-wide use of the Mitchell WorkCenter computer program to justify unreasonably low evaluations of total loss claims of its insureds, including Plaintiff, has resulted in wrongful profits generated by Progressive through encouraging their employees to make payments on total loss claims that Progressive either knows or should know are less than the fair and reasonable value of those claims.

37. Progressive use of the Mitchell WorkCenter and refusal to pay more than the WorkCenter evaluation is contrary to the policy and Oklahoma law.

38. Progressive's use of the Mitchell WorkCenter program/software to justify their unreasonably low evaluation of the Plaintiff's claim constitutes fraud/constructive fraud/deceit in the Plaintiff's individual case, as well as in the claims of an entire class of similarly situated insureds.

39. Progressive's conduct, through their use of the Mitchell WorkCenter program has resulted in damages for fraud/constructive fraud/deceit to Plaintiff and numerous other policyholders in Oklahoma and around the country.

## COUNT III:  BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

40. Plaintiff adopts and re-pleads paragraphs 1-39, above, and further alleges as follows:

41. Progressive has a duty to deal fairly and in good faith with Plaintiff and all of their insureds.

42. Plaintiff made due demand on Defendant for payment of the policy benefits, and met all conditions precedent for payment of those benefits.

43. Defendant owed a duty to Plaintiff, and other similarly situated class insureds, to deal fairly and in good faith. Defendant has breached its duty to Plaintiff, and other similarly situated class insureds. The enumerated actions alleged herein violates the Defendant's duty of good faith and fair dealing with the Plaintiff and the entire class of insureds Plaintiff seeks to represent in this matter.

44. Upon information and belief, Plaintiff alleges that it is the corporate goal of the Defendant to increase its profits by reducing, delaying or avoiding the full and fair payment of claims.

45. Upon information and belief, the Plaintiff further alleges that the actions of the Defendant during the handling of her claims and the claims of other insureds were not isolated events, but rather were consistent with approved company-wide practices or policies which reward and encourage the systematic reduction, delay or avoidance of the payment of claims.

46. In its handling of Plaintiff's claims, and those of other similarly situated class insureds, and as a matter of standard business practice in handling like claims, Defendant breached its duty to deal fairly and act in good faith towards the Plaintiff and other similarly situated class insureds by:

    a.  Failing and refusing to pay the benefits due to under the Policy;
    b.  Failing to properly investigate claims;
    c.  Failing to adopt and implement reasonable standards for the prompt investigation and handling of claims arising under such policies;
    d.  Withholding payment of the benefits knowing that claims for those benefits were valid;
    e.  Refusing to honor claims in some instances by knowingly misconstruing and misapplying provisions of the Policy;
    f.  Refusing to honor claims in some instances by knowingly misconstruing and misapplying standard insurance principles;

g. Knowingly misrepresenting that the Mitchell WorkCenter program/software was using "comparable vehicles" in their evaluations;

h. Knowingly misrepresenting to Plaintiff that Progressive would not be able to pay more than their evaluation utilizing the Mitchell WorkCenter program/software;

i. Intentionally misconstruing and misrepresenting applicable policy provisions;

j. Failing to reasonably construe the facts to applicable Oklahoma law;

k. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims;

l. Forcing Plaintiff; pursuant to their standard business practice, to retain counsel in order to secure benefits Defendant knew were payable;

m. Failing to properly investigate and evaluate any investigation that was performed, including but not limited to, intentionally disregarding the undisputed facts concerning the claim;

n. Unreasonably delaying and denying policy benefits, all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to Defendant.

47. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and all others similarly situated have been damaged.

48. Defendant's conduct was intentional, willful, malicious, and committed in utter reckless disregard of Plaintiff's rights, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## CLASS ACTION ALLEGATIONS

49. The class representative brings this action pursuant to 12 O.S. §2023, individually and on behalf of all others similarly situated, as a representative member of the following proposed class:

50. All entities and adult persons domiciled or residing in the State of Oklahoma who purchased an automobile policy containing collision and/or comprehensive coverage for the years 2010-2017.

51. The class of Defendant's insureds described herein is comprised of thousands of insureds whose claims for covered damage were under-adjusted in that Defendant failed to properly pay their total loss claims.

52. The members of the class are so numerous that joinder is impractical and would involve thousands of litigants. The exact number and identities of class members are unknown at this time and can be ascertained through appropriate investigation and discovery. Upon information and belief there are thousands of potential class members in Oklahoma who are within the class described above.

53. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to any other method for the fair and efficient adjudication of this controversy.

54. The claims of the class representative and Defendant's defenses to those claims are typical of the claims to be advanced by members of the class and Defendant's defenses thereto.

55. Plaintiff will adequately represent the interests of the class and each of its members.

56. This case will, therefore, meet all requirements of 12 O.S. §2023 and will be appropriate for class certification.

**COMBINED PRAYER FOR RELIEF**

WHEREFORE, premises considered, Plaintiff prays for judgment in her favor and against Defendant, Progressive, for:

a) Certification of this matter as a class action pursuant to 12 O.S. §2023;

b) Payment for all contractual benefits for all coverages promised to Plaintiff under the policy of insurance, with interest on all amounts due;

c) Actual, consequential, and punitive damages by reason of Defendant's breach of the duty of good faith and fair dealing which will exceed $10,000.00;

d) Disgorgement of the increased financial benefits derived by Defendant as a result of its wrongful conduct;

e) Pre-judgment and post-judgment interest, costs, and reasonable attorney's fees; and

f) Any other relief the Court deems just and equitable.

Respectfully submitted,

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK  73103
Telephone:   (405) 232-5291
Facsimile:   (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

**ATTORNEY'S LIEN CLAIMED**
**JURY TRIAL DEMANDED**

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLHOMA

| | |
|---|---|
| RACHEL CURTIS, Individually and on Behalf of Persons Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. CJ-2017-5046 |
| | ) |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) Honorable Lisa T. Davis |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUEST FOR PRODUCTION TO DEFENDANT

To:  PROGRESSIVE NORTHERN INSURANCE COMPANY

Plaintiff, by and through her Attorney, propound the attached Interrogatories and Requests for Production to the above-named Defendant, to be answered pursuant to the Oklahoma Discovery Code, Okla. Stat. Tit. 12, §§ 3233, 3234, 3236.

### DEFINITIONS

1. "Person" includes every individual, firm, proprietorship, corporation, partnership, association, or any other type of organization or entity, including governmental entities.

2. "Identify", "identity" or "identification," where used in reference to a natural person, requires statement of the person's full name, date of birth, current or last known employer, current or last known home and business addresses, home and business telephone numbers, and present business affiliation and position.

Where used with a business or other entity, these terms require a statement of the full name, form of organization, and present and last known address.

Where used with reference to a document, state the following: the name and type of document, the date of the document, its present location, the custodian's identification and the disposition of the document, if any.

Where used in reference to a statement or description, state the following: a specific account of what was stated or described, the date or time period involved; the identity of person(s) from whom the information was learned, who would have knowledge of that information, and/or who

participated or were present; what happened in chronological order relating each identifiable event, response, act or other thing; where the occurrence took place by address, ownership and use, the context or circumstances in which the occurrence took place; and what response or reaction existed to cause the occurrence to take place and/or was made after the occurrence took place.

Where used in reference to a meeting, conference, conversation or other communication, these terms require statement of the date and time, the identification of each and every person involved and the location of each and every party to the conference or communication at the time it took place.

3. "Communication" refers to any oral statement, dialogue, colloquy, discussion or conversation, and also refers to any transfer of thoughts or ideas between persons by means of documents, and includes any transfer of data from one location to another by electronic or similar means, such as e-mail or telefax.

4. "And/or" shall each be construed disjunctively or conjunctively so as to require the broadest possible production in response to any given Interrogatory.

5. "Describe" means to set forth specifically and in detail all facts known about the matter of which the Interrogatory inquires.

6. "You" and "your" mean PROGRESSIVE NORTHERN INSURANCE COMPANY and all other persons acting or whom you believe to have acted on behalf of you.

7. "Defendant(s)" is intended to and shall embrace and include, in addition to any one of the defendant(s) named in the above-captioned action, as well as any agent, employee or other representative of any one of the defendant(s) in the above-captioned action, including, but not limited to, any negotiators, adjusters, investigators, brokers, attorneys, or accountants and/or others who are in possession or may have obtained information for or on behalf of a named defendant(s).  This term used immediately after the term "any one of," is intended to elicit a response from each defendant.

8. A document "relating to" a given subject means any document constituting or comprising that subject, and any document identifying, referring to, dealing with, commenting upon, describing, summarizing, analyzing, explaining, detailing, outlining, defining, interpreting or pertaining to that subject.

9. "WorkCenter Total Loss" means the Mitchell WorkCenter Total Loss valuation system, Progressive WorkCenter Total Loss, or the Mitchell Total Loss Valuation system (TLV).

10. Document.  When used in this request, the term "document" means the original (or an identical duplicate if the original is not available), and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind) of writings of every kind a description that

2

are fixed in any form of physical media. Physical media include, but are not limited to, paper media, phonographic media, photographic film media (including pictures, films slides and microfilm), magnetic media (including but not limited to hard disks, floppy disks, compact disks, and magnetic tapes of any kind), computer memory, optical media, magneto-optical media, and other physical media on which notations or marking of any kind can be affixed.

Documents include, by way of example only, any memorandum, request envelope, correspondence, electronic mail, report, note, Post-it, message, telephone message, telephone log, diary, journal, appointment calendar, calendar, group scheduler calendar, drawing, painting, accounting paper, minutes, working paper, financial report, accounting report, work papers, drafts, facsimile, facsimile transmission, report contract, invoice, record of purchase or sale, Teletype message, chart, graph, index, directory, computer directory, computer disk, computer tape, or any other written, printed, typed, punched, taped, filmed, computer disk, computer tape, or any other written, printed, typed punched, taped, filmed, or graphic matter however produced or reproduced. Documents also include the file, folder tabs, and labels appended to or containing any documents.

11. "Insurance Industry" means businesses that provide automobile insurance coverage to consumers and/or businesses that provide claims and vehicle valuation services for insurance companies.

INTERROGATORY INSTRUCTIONS

1. If the answers to Interrogatories below are the composite of knowledge of more than one person, by name and address all persons who contributed to the answers of such Interrogatories.

2. Please explain if you cannot answer a particular Interrogatory in full and state whatever information or knowledge you have.

3. These Interrogatories are continuing pursuant to Okla. Stat. Tit. 12, §3226E, so as to require amended answers where necessary.

4. As to every Interrogatory which you fail to answer in whole or in part on the ground that the information sought involves a document or oral communication which you contend to be privileged or otherwise protected from disclosure, state in detail: (a) the portion of the Interrogatory to which the response is claimed to be privileged; (b) the identification of the document, as defined below; (c) the author, recipients, and general subject matter of the document or communication; (d) the identity of any other persons having knowledge of the document or communication involved; (e) the nature of the privilege claimed; and (f) every fact on which you base the claim of privilege or that the information need not be disclosed.

5. The use of a particular gender in plural or singular and the words defined herein are intended to include appropriate gender or number.

6. If you object for any reason or on any grounds, provide a detailed statement of your

objection.

PLEASE NOTE THESE INSTRUCTIONS: Any Interrogatories requesting the identification of witnesses or inquiring as to the existence, location or custodian of documents or physical evidence count as a single Interrogatory for the purpose of the thirty (30) Interrogatory limitation pursuant to 12 O.S. §3233.

## INTERROGATORIES

INTERROGATORY NO. 1: Please identify by name, address, and job title all persons answering or assisting in answering these interrogatories.

INTERROGATORY NO. 2: What was the date Progressive first began using the Mitchell WorkCenter Total Loss valuation system in Oklahoma?

INTERROGATORY NO. 3: Identify how many Progressive first-party total loss claims have been adjusted in Oklahoma using the WorkCenter Total Loss system.

INTERROGATORY NO. 4: Is the WorkCenter Total Loss system still in use by Progressive in Oklahoma? If not, please state why its use was discontinued. If it is still in use, please advise whether there are plans to discontinue its use.

INTERROGATORY NO. 5: Did Progressive ever provide any input, feedback, or advice to Mitchell on any of their total loss valuation systems, including, but not limited to, iNTOTAL, WorkCenter Total Loss and Total Loss Valuation? If yes, describe in detail what was provided and the date(s) it was provided.

INTERROGATORY NO. 6: Do you contend Progressive's use of the Mitchell WorkCenter Total Loss Valuation system complies with Oklahoma law and the policy at issue? If your answer is in the affirmative, state the basis for your contention.

INTERROGATORY NO. 7: Has the contractual language of the policy Progressive had with Plaintiff changed since Progressive started using the Mitchell Total Loss Valuation system? If yes, describe any and all changes. (In other words, is the policy the same one that has been used over the last several years for all Oklahoma insureds?)

INTERROGATORY NO. 8: Describe in detail how, and whether Progressive has a policy (either verbal or written) for providing offers to its insureds for the total loss of their vehicle, stating specifically whether an offer is first made by phone, mail, e-mail, or in person. If yes, describe that policy.

INTERROGATORY NO. 9: Describe in detail how the Mitchell WorkCenter Total Loss Valuation system reaches its values.

INTERROGATORY NO. 10: Describe how the Mitchell WorkCenter Total Loss system determines comparable vehicle prices and state specifically whether that system uses the sold price or list

4

price of comparable vehicles.

INTERROGATORY NO. 11: Referring specifically to the comparable vehicles used in the Curtis valuation report, please provide the exact location (city and state) of those vehicles, any and all details known to you regarding their condition.

INTERROGATORY NO. 12: To your knowledge, has Progressive and/or Mitchell ever had its WorkCenter Total Loss Valuation system approved by the Oklahoma Insurance Department or any other Oklahoma governmental authority?

INTERROGATORY NO. 13: Describe what the "Projected Sold Adjustment" line item on the Mitchell WorkCenter Total Loss evaluation means and how Progressive or Mitchell determines the amount.

INTERROGATORY NO. 14: Describe how the Mitchell WorkCenter Total Loss system determines the "market value" of a total loss vehicle when no comparable vehicles exist.

INTERROGATORY NO. 15: Identify whether a newer or older model vehicle can be used as a comparable vehicle by in the Mitchell WorkCenter Total Loss system based upon condition, optional equipment, and mileage of the total loss vehicle.

## INSTRUCTIONS FOR REQUESTS FOR PRODUCTION

1. These Requests for Production are intended to ascertain information and require that defendant(s) make a complete search of all records and evidence at the disposal or in the possession of itself, its agents, investigators, servants, employees, representatives, attorneys and accountants, and those that are contained in the records or other materials in his custody, control, or available to you or them.

2. Under 12 O.S. §3234(B)(5)(a) the documents requested **shall be produced as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories in the request.**

3. Under 12 O.S. §3234(B), your response shall state, with respect to each item or category, that inspection and related activities shall be permitted as requested, unless the request is objected to, in which event the reasons for objection shall be stated with specificity. If objection is made to part of an item or category, the part shall be specified and the objection detailed.

4. This request is intended to be deemed continuing in character, so as to request you to properly amend or supplement your response if you obtain further material information.

5. If any document is withheld for any reason, including but not limited to any alleged claim of privilege, confidentiality or trade secret, or for any other reason or objection, please provide a description of the document being withheld which includes the following:

a) The date of the document;

5

b) The author of the document;

c) The recipient of the document;

d) All persons to who copies of the document have been furnished;

e) The general subject matter of the document;

f) The file in which the document is kept in the normal course of business;

g) The current custodian of the document; and

h) The nature of the privilege claimed or other reason for not producing the document and sufficient description of the facts surrounding the contents of the document to justify withholding the document under said privilege or reason.

6. If any document responsive to this request was, but is no longer in your possession, custody or actual or constructive control, or in existence, state whether it (1) is missing or lost; (2) has been destroyed; (3) has been transferred voluntarily or involuntarily to others; or (4) has been otherwise disposed of, and in each instance explain the circumstances surrounding the authorization of such disposition and state the date or approximate date thereof.

7. If the document(s) meeting each document request should exceed one hundred (100) in number, defendant(s) shall, prior to the due date for your Response to Request for Production, supply an inventory describing with particularity each such document, and plaintiff(s) will elect upon said inventory of such documents provided, which documents shall be in fact produced. In the event that no such inventory is provided by defendant(s), all documents described by said Request for Production shall be provided at the time above-referenced and specified.

8. The use of a particular gender in plural or singular and the words defined herein are intended to include appropriate gender or number as any particular definition of document request may require.

## REQUESTS FOR PRODUCTION

REQUEST FOR PRODUCTION NO. 1: All documents identified, reviewed, or referred to in preparing your answers to Interrogatories, with each document segregated as to the relevant Interrogatory.

REQUEST FOR PRODUCTION NO. 2: A complete copy of Progressive's claim file for both of the total loss of Rachel Curtis' vehicles.

REQUEST FOR PRODUCTION NO. 3: A copy of any and all contracts or agreements Progressive maintains with Mitchell for the use of the WorkCenter Total Loss system or any other total loss valuation systems provided by Mitchell.

6

REQUEST FOR PRODUCTION NO. 4:  A copy of any and all promotional materials provided by Mitchell to Progressive regarding the WorkCenter Total Loss system or any of its predecessors' systems, to include all writings, memos, e-mails, Power Point presentations, videos, or the like.

REQUEST FOR PRODUCTION NO. 5:  A copy of all WorkCenter Total Loss valuation reports generated for total loss claims paid by Progressive in Oklahoma together with any documentation providing the amount paid to its insureds to satisfy those claims.

REQUEST FOR PRODUCTION NO. 6:  Any and all documents, data, or analyses created, maintained, or provided to Progressive which compares the WorkCenter Total Loss Valuation systems to NADA, Kelley Blue Book, or any other valuation method.

REQUEST FOR PRODUCTION NO. 7: Any and all documents, data, or analyses which measure the average savings or profitability of the use of the WorkCenter Total Loss Valuation system to Progressive.

REQUEST FOR PRODUCTION NO. 8:  Any and all documents either generated by or provided to you which address whether the Mitchell WorkCenter Total Loss system complies with Oklahoma law.

REQUEST FOR PRODUCTION NO. 9:  A copy of any and all documentation, data, or analyses provided by you to Mitchell regarding the utility or potential use by Progressive of any Mitchell total loss valuation system.

REQUEST FOR PRODUCTION NO. 10:  Please provide the full Vehicle Identification Number and all information in your possession for the 2006 Chevrolet Malibu identified on Rachel Curtis's Mitchell WorkCenter Total Loss valuation report listed at location Zip Code 73703 and Sold Price of $5,500.00.

## REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1: Admit that you, as an insurer, have a duty to act in good faith towards Plaintiff, as your insured, even throughout this litigation process.

REQUEST FOR ADMISSION NO. 2: Admit that Progressive made no adjustments to the Mitchell WorkCenter valuation after offering Plaintiff a settlement of $4,282.54.

REQUEST FOR ADMISSION NO. 3: Admit that Progressive informed Plaintiff that you would not be able to pay her more than shown on the Mitchell valuation.

REQUEST FOR ADMISSION NO. 4: Admit that actual cash value under Plaintiff's policy is determined by market value, age, and condition of the vehicle at the time the loss occurs.

REQUEST FOR ADMISSION NO. 5: Admit that Progressive only utilized 2006 Chevrolet Malibu's in Plaintiff's Mitchell WorkCenter valuation.

7

REQUEST FOR ADMISSION NO. 6: Admit that Progressive could have utilized 2005, 2006, and 2007 Chevrolet Malibu's in Plaintiff's Mitchell WorkCenter valuation.

REQUEST FOR ADMISSION NO. 7: Admit that the 2006 Chevrolet Malibu identified on Plaintiff's Mitchell WorkCenter Total Loss valuation listed at location Zip Code 73703 is not a real vehicle.

Dated this __8__ day of _September_, 2017.

Respectfully submitted,

Jason Waddell OBA #30761
Jason Waddell, PLLC
222 NW 13th St.
Oklahoma City, OK 73103
Telephone:     405-232-5291
Facsimile:      405-708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

8

 CT Corporation

**Service of Process Transmittal**
09/21/2017
CT Log Number 531973676

**TO:**   Jean Kelly
Progressive Casualty Insurance Company
Corporate Law Department, 6300 Wilson Mills Rd. N72
Mayfield Village, OH 44143-

**RE:**   **Process Served in Oklahoma**

**FOR:**   Progressive Northern Insurance Company  (Domestic State: WI)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Rachel Curtis, Individuallty and on Behalf of Person Similarly Situated, Pltf. vs. Progressive Northern Insurance Company, Dft. |
| **DOCUMENT(S) SERVED:** | Letter, Summons, Petition, First Interrogatories and Request |
| **COURT/AGENCY:** | Oklahoma County District Court, OK<br>Case # CJ20175046 |
| **NATURE OF ACTION:** | Insurance Litigation |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Company, Oklahoma City, OK |
| **DATE AND HOUR OF SERVICE:** | By Certified Mail on 09/21/2017 postmarked on 09/20/2017 |
| **JURISDICTION SERVED :** | Oklahoma |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service, exclusive of the day of service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Jason Waddell<br>Jason Waddell, PLLC<br>222 NW 13th Street<br>Oklahoma City, OK 73103<br>405-232-5291 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/22/2017, Expected Purge Date: 09/27/2017<br><br>Image SOP<br><br>Email Notification,  Paula Stewart  paula_stewart@progressive.com<br><br>Email Notification,  Deborah Fisk  deborah_fisk@progressive.com<br><br>Email Notification,  Jean Kelly  JEAN_A_KELLY@Progressive.com<br><br>Email Notification,  Bonnie Thomas  bonnie_thomas@progressive.com<br><br>Email Notification,  Rachael Hembree  rachael_hembree@progressive.com |
| **SIGNED:**<br>**ADDRESS:** | The Corporation Company<br>1833 South Morgan Road<br>Oklahoma City, OK 73128 |

Page 1 of  2 / BV

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

 CT Corporation

**Service of Process Transmittal**
09/21/2017
CT Log Number 531973676

**TO:**     Jean Kelly
Progressive Casualty Insurance Company
Corporate Law Department, 6300 Wilson Mills Rd. N72
Mayfield Village, OH 44143-

**RE:**     **Process Served in Oklahoma**

**FOR:**    Progressive Northern Insurance Company  (Domestic State: WI)

**TELEPHONE:**          214-932-3601

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



**JOHN D. DOAK**
**Insurance Commissioner**
Oklahoma Insurance Department
5 Corporate Plaza
3625 NW 56th Street, Suite 100
Oklahoma City, OK 73112-4511

7016 2140 0000 3511 0959

CERTIFIED MAIL

NEOPOST
09/20/2017
US POSTAGE $007.7¹⁰
FIRST-CLASS MAIL
ZIP 73112
041M11276941

The Corporation Company
1833 South Morgan Road
Oklahoma City, OK 73128

GOVERNOR
MARY FALLIN

INSURANCE COMMISSIONER
JOHN D. DOAK



# INSURANCE COMMISSIONER
## State of Oklahoma

September 19, 2017


PROGRESSIVE NORTHERN INSURANCE
COMPANY
6300 WILSON MILLS RD W33
MAYFIELD VILLAG OH  44143


RE:  CJ20175046
     In the District Court in OKLAHOMA
     State of Oklahoma
     RACHEL CURTIS
              vs
     PROGRESSIVE NORTHERN INSURANCE
     COMPANY

Dear Sir or Madam:

Enclosed is a copy of the above captioned summons
served on the Insurance Commissioner as designated agent
for service of process of foreign insurance companies doing
business in the State of Oklahoma (36 O.S. section 621(B)).

Sincerely,

JOHN DOAK
Insurance Commissioner

Maria Torres                    Legal Department


                     dp/enclosure


                THE CORPORATION COMPANY
                1833 SOUTH MORGAN ROAD
                OKLAHOMA CITY    OK  73128

*6880*

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLHOMA

OKLAHOMA INSURANCE DEPARTMENT
RECEIVED
SEP 19 2017
Legal Division

RACHEL CURTIS, Individually and on )
Behalf of Persons Similarly Situated, )
)
        Plaintiff,                   )
                                     )
v.                                   )        Case No. CJ-2017-5046
                                     )
PROGRESSIVE NORTHERN INSURANCE       )
COMPANY,                             )
                                     )
        Defendant.                   )

### ALIAS SUMMONS

**TO THE ABOVE NAMED DEFENDANT:**  PROGRESSIVE NORTHERN INSURANCE COMPANY

You have been sued by the above-named Plaintiff and you are directed to file a written Response to the attached Amended Petition in the office of the Court Clerk in the County named above **within twenty (20) days** after service of this summons upon you, exclusive of the day of service. Within the same time, a copy of your Response must be delivered or mailed to the attorney for Plaintiff or to the Plaintiff if not represented by an attorney.

**Unless you respond to the Petition within the time stated, judgment will be rendered against you for the relief demanded in the petition, with costs of the action.**

Issued this 15th day of September, 2017.

RICK WARREN, Court Clerk

By:_____
Deputy Court Clerk

Jason Waddell OBA #30761
222 NW 13th St.
Oklahoma City, OK 73103
405-232-5291  Phone
405-708-7871 Fax
Jason@JasonWaddellLaw.com

**YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR RESPONSE. SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT A RESPONSE MAY BE FILED WITHIN THE TIME LIMIT STATED IN THE SUMMONS.**

This Summons AND Petition were served on this_____ day of _____, 2017.

_____
Name of Person Serving Summons

IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

SEP 1 5 2017

RICK WARREN
COURT CLERK

73_____

| | | |
|---|---|---|
| RACHEL CURTIS, Individually and on Behalf of Persons Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CJ-2017-5046 |
| PROGRESSIVE NORTHERN INSURANCE COMPANY, | ) ) ) | Hon. Lisa T. Davis |
| Defendant. | ) ) | |

## AMENDED PETITION

COMES NOW Plaintiff, Rachel Curtis, individually and on behalf of other persons and a class of those similarly situated ("Plaintiff"), and for her cause of action against Defendant, Progressive Northern Insurance Company ("Progressive"), states as follows:

### PARTIES

1. Rachel Curtis, who is of the age of majority, domiciled in Oklahoma County, State of Oklahoma, and who further appears as Plaintiff and on behalf of those individuals similarly situated as Proposed Class Representative.

2. Defendant is an insurance company domiciled in the State of Wisconsin. At all times relevant hereto, Progressive was in the business of promoting, marketing, and underwriting automobile insurance policies in the State of Oklahoma.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this subject matter and class action pursuant to 12 O.S. §2023.

4. Venue in this case is founded on 12 O.S. §137. Pursuant to this section, an action against a foreign corporation may be brought where the cause of action or part thereof arose. The

cause of action of the named class representative arose in Oklahoma County. Defendant, Progressive Northern Insurance Company, is doing business in Oklahoma, and received substantial compensation and profits from the sale of automobile insurance policies in Oklahoma.

## PRELIMINARY STATEMENT AND FACTUAL ALLEGATIONS

5. Plaintiff and the proposed class are holders of written policies of insurance issued by Progressive whereunder Progressive agreed to provide, *inter alia,* collision and/or comprehensive coverage for losses resulting from theft or damage of the vehicle. Collision and/or comprehensive coverage is additional coverage not required by Oklahoma law which requires the policy holder to pay additional premiums.

6. The Plaintiff and class representative purchased a policy of insurance from Progressive Northern Insurance Company, Policy No. 912550710, within the applicable period. She filed two (2) total loss claims during this period.

7. Both collision and comprehensive coverages obligate Progressive to pay the "actual cash value" of vehicles determined to be a total loss. The relevant policy language in Progressive Policy No. 912550710:

> LIMITS OF LIABILITY
> 1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
> a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
> 2. Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions:
> g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

8. Oklahoma's Insurance Code and Oklahoma statutes provide the standards for evaluating and paying automobile total loss claims. For first party claims, the Insurer must follow a set of guidelines that helps it determine the actual cash value or fair market value using comparable vehicles in the local market area. In a total loss claim, the fair market value of the vehicle is determined as listed in the current National Auto Dealers Association ("NADA") guidebook or other similar guidebook or the actual cash value, whichever is greater.[1]

9. Upon information and belief that since at least 2010, Progressive has used a program by JD Power called "Mitchell WorkCenter Total Loss" to calculate the value of a total loss vehicle in Oklahoma. This program consistently undervalues the total loss amount due to policy holders by failing to use "comparable vehicles" as required by the Oklahoma Insurance Code, and fails to determine the actual cash value as determined by the market value as contained in the relevant policy language and applicable law. Plaintiff asserts this undervaluation is a common occurrence among Progressive insureds, causing millions of dollars in underpaid claims.

10. During the relevant time period, Progressive has violated its contracts and Oklahoma law by determining the value of comparable vehicles be using what it refers to as a "Projected Sales Price." The projected sales price provided by the Mitchell program and Progressive purports to account for the difference between the advertised price and the price the vehicle is likely to sell, thus its "projected" selling price. The projected sales price is invariably lower, which aligns with Mitchell's Vehicle Valuation Methodology Explanation: "Projected Sold Adjustment- an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Thus, Progressive is not providing their insureds with the "actual

---

[1] 36 O.S. §1250.1 *et seq*; 47 O.S. §1111

cost" or "actual cash value" of comparable vehicles, they are automatically assuming a credit for a speculative lower negotiated sold price that their insured must secure for themselves. The use of a projected sales price to adjust total loss claims downwards violates the policy and applicable Oklahoma law in that the "market value" of the motor vehicle is not being provided to their insureds.

11. Progressive also comports to use comparable vehicles based upon the age, condition, and equipment of the total loss vehicle versus the "comparable vehicles." This adjustment is not sufficiently or fully explained or described to the insured, who would understand neither the nature nor the appropriateness of the adjustments. Plaintiff is informed and believes, and thereupon alleges, that the information provided to insureds concerning the valuation of total loss vehicles is intentionally obscure and is intended to disguise the use by Progressive of illegal and misleading valuation practices.

12. The intent and effect of the Mitchell valuation is to intentionally obscure the most controversial aspects of the valuation and mislead insureds concerning the quality of the evaluation and the unlawfulness of key aspects of the Valuation. Particularly, but not limited to, its use of the Projected Sales Price, use of non-comparable vehicles, and intentionally vague and misleading adjustments made to the comparable vehicles, induces Plaintiff and other similarly situated insureds to rely on the information.

13. On or about June 8, 2017, Plaintiff while driving her 2006 Chevrolet Malibu which contained a 4-cylinder motor (hereafter "Malibu 4-cylinder") was involved in an accident resulting in a total loss claim. The Malibu 4-cylinder had approximately 97,923 miles at the time of the total loss.

14. On or about June 13, 2017, Progressive, utilizing the Mitchell WorkCenter program/software paid $4,048.85 to settle Plaintiff's total loss to her Malibu 4-cylinder on Progressive Claim No. 17-3529731-01.

15. On or about June 13, 2017, Plaintiff purchased another 2006 Chevrolet Malibu with a 6-cylinder motor (hereafter "Malibu 6-cylinder").

16. On or about July 4, 2017, Plaintiff while driving her Malibu 6-cylinder was involved in an automobile accident which resulted in a total loss, Claim No. 17-4035104-01. The Malibu 6-cylinder had less than 67,000 miles at the time of the total loss.

17. On or about July 5, 2017, the Defendant determined that the actual cash value of Plaintiff's Malibu 6-cylinder was $4,282.54 utilizing the Mitchell WorkCenter program.

18. The difference in price determined by Progressive for Plaintiff's two (2) total loss vehicles was $196.69, even though one was 4-cylinder car with over 97,000 miles and the other was a 6-cylinder car with less than 67,000 miles.

19. Plaintiff objected to the "comparable vehicles" that Defendant used to determine the actual cash value of her July 4th Malibu 6-cylinder total loss. Specifically, the Plaintiff's vehicle had less than 67,000 miles at the time of loss while the five vehicles that Defendant identified as "comparable vehicles" had mileages of 97,509; 140,334; 163,391; 175,247; and 187,955 respectively. At least one of the "comparable vehicles" utilized by Defendant had been reported as a "total loss."

20. The Projected Sold Adjustment for four (4) of the "comparable vehicles" provided by Progressive to Plaintiff all reflect a monetary deduction shown as a percentage reduction of: 10.50%; 10.50%; 10.54%; and 10.50%. Thus, Progressive automatically deducted 10.5% of the

price of their supposed "comparable vehicles" which reduces Plaintiff's recovery under the policy. This off the top reduction to the price of the four (4) "comparable vehicles" resulted in a savings to Progressive of: $348.00; $362.00; $310.00; $334.00. Upon information and belief, Plaintiff believes that Progressive employs this practice across all members of the proposed class.

21. On or about July 6, 2017, the Plaintiff provided the Defendant with a printout copy of a NADA value for her Malibu 6-cylinder which showed a value of $6,125.00, further stating that this amount would be acceptable as settlement for the loss.

22. On July 7, 2017, Defendant provided Plaintiff with their own NADA printout showing Plaintiff's vehicle was valued at $5,912.00. However, the Defendant refused to pay Plaintiff the NADA value of Plaintiff's vehicle or to adjust their valuation of Plaintiff's vehicle.

### COUNT I: BREACH OF CONTRACT

23. Plaintiff incorporates herein by reference the allegations of the proceeding paragraphs of this Amended Petition.

24. Progressive entered into a written insurance contract with Plaintiff and each member of the Class to provide collision and/or comprehensive coverage for the loss or damage to the insured vehicle.

25. Plaintiff purchased and was the named insured on Policy No. 912550710, which insured the Plaintiff's vehicle from the subject loss by comprehensive and collision coverage.

26. Defendant agreed to pay Plaintiff and members of the class for the value of the vehicle if it was as total loss vehicle, based upon the applicable policy language.

27. On or about June 8, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 4-cylinder was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

28. On or about July 4, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 6-cyliner was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

29. All premiums on the Policy were paid and Plaintiff complied with all provisions of her Insurance Policy.

30. Pursuant to the policy of insurance written and issued to Plaintiff and Class, Defendant had a duty to pay the Plaintiff's losses.

31. That Plaintiff made due demand on Defendant for payment of the policy benefits. Defendant failed to pay the reasonable value for the Malibu 4-cylinder claim. Defendant has refused to pay the benefits due for the Malibu 6-cylinder claim.

32. Defendant wrongfully failed and refused to properly pay Plaintiff and each Class member by failing to base payment to the insured on the "market value, age, and condition at the time the loss occurred" as required by the contract of insurance. This failure results from the use of a "projected sales price" and the use of vague adjustments to reduce the amount payable to insureds.

33. Plaintiff is informed, and therefore believes, that Defendant's practice of failing to properly pay auto property claims utilizing Mitchell WorkCenter to evaluate said claims is a practice that has been employed by Defendant since 2010 and involves underpayment of thousands of claims.

34. As a direct result of the action of Defendant, Plaintiff and all other similarly situated insureds have been damaged by Defendant's breach of contract.

## COUNT II: FRAUD/CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION

35. Plaintiff adopts and re-pleads paragraphs 1-34, above, and further alleges as follows:

36. Defendant utilizes a computer program known as Mitchell WorkCenter to evaluate and adjust total loss claims in Oklahoma and various jurisdictions around the country.

37. The Mitchell WorkCenter computer program utilizes a set of reference values that results in outcome oriented, unreasonably low evaluations of total loss claims.

38. Progressive represents to its first party insureds, either directly or indirectly through their agents, that it uses "comparable vehicles" to determine the value of the total loss vehicle. Instead, Progressive employs various schemes by utilizing the Mitchell WorkCenter program to select the 'vehicles' in a manner which allows them to reduce the calculated value they pay for "total loss vehicles." By affirmatively representing to the Insured that they were using comparable vehicles, when Progressive knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

39. Progressive falsely represented to their insureds, including Plaintiff, that the Mitchell WorkCenter evaluation represents fair and reasonable evaluations of total loss claims when they know or should know otherwise.

40. Progressive intentionally and knowingly made false statements to Plaintiff about the value of her cars to induce her to accept a reduced amount on her insurance claims.

41. Progressive either knows or should have known that most insureds, including Plaintiff, seeking insurance benefits are vulnerable, less skilled in the art of negotiation and have neither time nor the resources to engage in protracted litigation against Defendant to obtain the fair value of their total loss claims.

42. Progressive either knows or should know that for the reasons outlined above, many insureds never challenge Progressive's evaluation of their total loss claims and thus, never receive the full value of their claims.

43. On or about July 7, 2017, Plaintiff challenged the evaluation of her Malibu 6-cylinder total loss claim, and Progressive intentionally and knowingly made false statements to Plaintiff that they would not be able to pay her more than shown on the Mitchell WorkCenter evaluation.

44. For the reasons set forth above, Progressive's systematic, company-wide use of the Mitchell WorkCenter computer program to justify unreasonably low evaluations of total loss claims of its insureds, including Plaintiff, has resulted in wrongful profits generated by Progressive through encouraging their employees to make payments on total loss claims that Progressive either knows or should know are less than the fair and reasonable value of those claims.

45. Progressive use of the Mitchell WorkCenter and refusal to pay more than the WorkCenter evaluation is contrary to the policy and Oklahoma law.

46. Progressive's use of the Mitchell WorkCenter program/software to justify their unreasonably low evaluation of the Plaintiff's claim constitutes fraud/constructive fraud/deceit in the Plaintiff's individual case, as well as in the claims of an entire class of similarly situated insureds.

47. Progressive's conduct, through their use of the Mitchell WorkCenter program has resulted in damages for fraud/constructive fraud/negligent misrepresentation to Plaintiff and numerous other policyholders in Oklahoma and around the country.

## COUNT III:  BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

48. Plaintiff adopts and re-pleads paragraphs 1-47, above, and further alleges as follows:

49. Progressive has a duty to deal fairly and in good faith with Plaintiff and all of their insureds.

50. Plaintiff made due demand on Defendant for payment of the policy benefits, and met all conditions precedent for payment of those benefits.

51. Defendant owed a duty to Plaintiff, and other similarly situated class insureds, to deal fairly and in good faith. Defendant has breached its duty to Plaintiff, and other similarly situated class insureds. The actions alleged herein violate the Defendant's duty of good faith and fair dealing with the Plaintiff and the entire class of insureds Plaintiff seeks to represent in this matter.

52. Upon information and belief, Plaintiff alleges that it is the corporate goal of the Defendant to increase its profits by reducing, delaying or avoiding the full and fair payment of claims.

53. Upon information and belief, the Plaintiff further alleges that the actions of the Defendant during the handling of her claims and the claims of other insureds were not isolated events, but rather were consistent with approved company-wide practices or policies which reward and encourage the systematic reduction, delay or avoidance of the payment of claims.

54. In its handling of Plaintiff's claims, and those of other similarly situated class insureds, and as a matter of standard business practice in handling like claims, Defendant breached its duty to

deal fairly and act in good faith towards the Plaintiff and other similarly situated class insureds by:

a. Failing and refusing to pay the benefits due to under the Policy;

b. Failing to properly investigate claims;

c. Failing to adopt and implement reasonable standards for the prompt investigation and handling of claims arising under such policies;

d. Withholding payment of the benefits knowing that claims for those benefits were valid;

e. Refusing to honor claims in some instances by knowingly misconstruing and misapplying provisions of the Policy;

f. Refusing to honor claims in some instances by knowingly misconstruing and misapplying standard insurance principles;

g. Knowingly misrepresenting that the Mitchell WorkCenter program/software was using "comparable vehicles" in their evaluations;

h. Knowingly misrepresenting to Plaintiff that Progressive would not be able to pay more than their evaluation utilizing the Mitchell WorkCenter program/software;

i. Intentionally misconstruing and misrepresenting applicable policy provisions;

j. Failing to reasonably construe the facts to applicable Oklahoma law;

k. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims;

l. Forcing Plaintiff, pursuant to their standard business practice, to retain counsel in order to secure benefits Defendant knew were payable;

m. Failing to properly investigate and evaluate any investigation that was performed, including but not limited to, intentionally disregarding the undisputed facts concerning the claim;

n. Unreasonably delaying and denying policy benefits, all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to Defendant.

55. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and all others similarly situated have been damaged.

56. Defendant's conduct was intentional, willful, malicious, and committed in utter reckless disregard of Plaintiff's rights, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## COUNT IV: UNJUST ENRICHMENT

57. Plaintiff adopts and re-pleads paragraphs 1-56, above, and further alleges as follows:

58. As a direct result of Progressive's actions described herein, Defendant received unjust financial and material gains to the detriment of the Plaintiff and the Class.

59. At all relevant times, Progressive collected insurance premiums from Plaintiff and the members of the Class to pay collision and/or comprehensive coverage claims for loss or damage of the insured vehicle.

60. Progressive has been unjustly enriched by wrongfully and fraudulently withholding payment of the full, fair value of each total loss claim made by Plaintiff and members of the Class. It would be inequitable and unjust for Progressive to retain such ill-gotten gains.

61. The unjust enrichment of Progressive by payment of less than the full value of total claims through the use of improper adjustments has caused actual economic damages to the Plaintiff and Class members.

62. As a result of Progressive's unlawful and tortious conduct described herein, Progressive was enriched at the loss and expense of Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

63. The class representative brings this action pursuant to 12 O.S. §2023, individually and on behalf of all others similarly situated, as a representative member of the following proposed class:

All entities and adult persons domiciled or residing in the State of Oklahoma who purchased an automobile policy from Defendant containing collision and/or comprehensive coverage.

64. The class of Defendant's insureds described herein is comprised of thousands of insureds whose claims for covered damage were under-adjusted in that Defendant failed to properly pay their total loss claims.

65. The members of the class are so numerous that joinder is impractical and would involve thousands of litigants. The exact number and identities of class members are unknown at this time and can be ascertained through appropriate investigation and discovery. Upon information and belief there are thousands of potential class members in Oklahoma who are within the class described above.

66. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to any other method for the fair and efficient adjudication of this controversy. Common legal and factual questions include, but are not limited to, the following:

a. Whether Progressive's use of a "projected sales price" to determine the value of a total loss vehicle violates the policy and applicable Oklahoma law;

b. Whether Progressive's use of non-comparable vehicles violates the policy and applicable Oklahoma law;

c. Whether Progressive's failure to pay the NADA book value of total loss vehicles violates applicable Oklahoma law;

d. Whether Progressive's Mitchell valuation is "fully itemized and explained in writing for the claimant at the time the settlement offer is made" as required by the policy and applicable Oklahoma law;

e. Whether Progressive's use of the Mitchell valuation and adjustments violates the express terms of its automobile policies which require it to pay the insured the actual cash value of the total loss vehicle;

f. Whether Progressive's use of the Mitchell valuation and adjustments and its intentional failure to fully itemize and explain the valuation of total loss vehicles represents a breach of the covenant of good faith and fair dealing;

g. Whether and in what amount Progressive's use of the Mitchell valuation and adjustments resulted in unjust enrichment to Progressive at the expense of Plaintiff and the Class;

h. Whether and in what amount Progressive is liable to Plaintiff and the Class for actual damages and the amount of such damages;

i. Whether Progressive is liable to Plaintiff and the Class for punitive damages and the amount of such damages.

67. The claims of the class representative and Defendant's defenses to those claims are typical of the claims to be advanced by members of the class and Defendant's defenses thereto. Plaintiff and the proposed Class have suffered a common injury arising out of Progressive's common course of conduct as alleged herein. Upon information and belief, the relevant portions of Progressive's automobile policies issued during the relevant time period are substantially the same for each member of the Class. Upon information and belief, the

Mitchell valuation report provided to Plaintiff and Class valued the vehicles in the same manner, following the same or substantially the same methods and criteria. Thus, the claims asserted by Plaintiff and the proposed Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68. Plaintiff will fairly and adequately represent and protect the interests of the class and each of its members. Plaintiff has no interests which conflict with the Class and has retained an attorney who has the ability to fairly and adequately represent the interests of the class.

69. This case will, therefore, meet all requirements of 12 O.S. §2023 and will be appropriate for class certification.

## COMBINED PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays for judgment in her favor and against Defendant, Progressive, for:

a) Certification of this matter as a class action pursuant to 12 O.S. §2023;

b) Payment for all contractual benefits for all coverages promised to Plaintiff under the policy of insurance, with interest on all amounts due;

c) Actual, consequential, and punitive damages by reason of Defendant's breach of the duty of good faith and fair dealing which will exceed $10,000.00;

d) Disgorgement of the increased financial benefits derived by Defendant as a result of its wrongful conduct;

e) Pre and post-judgment interest, costs, reasonable attorney's fees; and

f) Any other relief the Court deems just and equitable.

Respectfully submitted,

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK  73103
Telephone:    (405) 232-5291
Facsimile:    (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

ATTORNEY'S LIEN CLAIMED
JURY TRIAL DEMANDED