EXHIBIT 2.4



IN THE DISTRICT COURT OF OKLAHOMA ~~COUNTY~~IN DISTRICT COURT
STATE OF OKLAHOMA            OKLAHOMA COUNTY

| | | |
|---|---|---|
| RACHEL CURTIS, Individually and on | ) | SEP 1 5 2017 |
| Behalf of Persons Similarly Situated, | ) | |
| | ) | RICK WARREN |
| Plaintiff, | ) | COURT CLERK |
| | ) | 73_____ |
| v. | ) | Case No. CJ-2017-5046 |
| | ) | |
| PROGRESSIVE NORTHERN INSURANCE | ) | Hon. Lisa T. Davis |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED PETITION

COMES NOW Plaintiff, Rachel Curtis, individually and on behalf of other persons and a class of those similarly situated ("Plaintiff"), and for her cause of action against Defendant, Progressive Northern Insurance Company ("Progressive"), states as follows:

## PARTIES

1. Rachel Curtis, who is of the age of majority, domiciled in Oklahoma County, State of Oklahoma, and who further appears as Plaintiff and on behalf of those individuals similarly situated as Proposed Class Representative.

2. Defendant is an insurance company domiciled in the State of Wisconsin. At all times relevant hereto, Progressive was in the business of promoting, marketing, and underwriting automobile insurance policies in the State of Oklahoma.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this subject matter and class action pursuant to 12 O.S. §2023.

4. Venue in this case is founded on 12 O.S. §137. Pursuant to this section, an action against a foreign corporation may be brought where the cause of action or part thereof arose. The

cause of action of the named class representative arose in Oklahoma County.  Defendant, Progressive Northern Insurance Company, is doing business in Oklahoma, and received substantial compensation and profits from the sale of automobile insurance policies in Oklahoma.

### PRELIMINARY STATEMENT AND FACTUAL ALLEGATIONS

5. Plaintiff and the proposed class are holders of written policies of insurance issued by Progressive whereunder Progressive agreed to provide, *inter alia,* collision and/or comprehensive coverage for losses resulting from theft or damage of the vehicle. Collision and/or comprehensive coverage is additional coverage not required by Oklahoma law which requires the policy holder to pay additional premiums.

6. The Plaintiff and class representative purchased a policy of insurance from Progressive Northern Insurance Company, Policy No. 912550710, within the applicable period.  She filed two (2) total loss claims during this period.

7. Both collision and comprehensive coverages obligate Progressive to pay the "actual cash value" of vehicles determined to be a total loss. The relevant policy language in Progressive Policy No. 912550710:

> LIMITS OF LIABILITY
> 1. The limit of liability for loss to a covered auto, non-owned auto, or custom parts or equipment is the lowest of:
> a. the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible;
> 2. Payments for loss to a covered auto, non-owned auto, or custom parts or equipment are subject to the following provisions:
> g. The actual cash value is determined by the market value, age, and condition of the vehicle at the time the loss occurs.

8. Oklahoma's Insurance Code and Oklahoma statutes provide the standards for evaluating and paying automobile total loss claims. For first party claims, the Insurer must follow a set of guidelines that helps it determine the actual cash value or fair market value using comparable vehicles in the local market area. In a total loss claim, the fair market value of the vehicle is determined as listed in the current National Auto Dealers Association ("NADA") guidebook or other similar guidebook or the actual cash value, whichever is greater.[1]

9. Upon information and belief that since at least 2010, Progressive has used a program by JD Power called "Mitchell WorkCenter Total Loss" to calculate the value of a total loss vehicle in Oklahoma. This program consistently undervalues the total loss amount due to policy holders by failing to use "comparable vehicles" as required by the Oklahoma Insurance Code, and fails to determine the actual cash value as determined by the market value as contained in the relevant policy language and applicable law. Plaintiff asserts this undervaluation is a common occurrence among Progressive insureds, causing millions of dollars in underpaid claims.

10. During the relevant time period, Progressive has violated its contracts and Oklahoma law by determining the value of comparable vehicles be using what it refers to as a "Projected Sales Price." The projected sales price provided by the Mitchell program and Progressive purports to account for the difference between the advertised price and the price the vehicle is likely to sell, thus its "projected" selling price. The projected sales price is invariably lower, which aligns with Mitchell's Vehicle Valuation Methodology Explanation: "Projected Sold Adjustment- an adjustment to reflect consumer purchasing behavior (negotiating a different price than the listed price)." Thus, Progressive is not providing their insureds with the "actual

---

[1] 36 O.S. §1250.1 *et seq*; 47 O.S. §1111

cost" or "actual cash value" of comparable vehicles, they are automatically assuming a credit for a speculative lower negotiated sold price that their insured must secure for themselves. The use of a projected sales price to adjust total loss claims downwards violates the policy and applicable Oklahoma law in that the "market value" of the motor vehicle is not being provided to their insureds.

11. Progressive also comports to use comparable vehicles based upon the age, condition, and equipment of the total loss vehicle versus the "comparable vehicles." This adjustment is not sufficiently or fully explained or described to the insured, who would understand neither the nature nor the appropriateness of the adjustments. Plaintiff is informed and believes, and thereupon alleges, that the information provided to insureds concerning the valuation of total loss vehicles is intentionally obscure and is intended to disguise the use by Progressive of illegal and misleading valuation practices.

12. The intent and effect of the Mitchell valuation is to intentionally obscure the most controversial aspects of the valuation and mislead insureds concerning the quality of the evaluation and the unlawfulness of key aspects of the Valuation. Particularly, but not limited to, its use of the Projected Sales Price, use of non-comparable vehicles, and intentionally vague and misleading adjustments made to the comparable vehicles, induces Plaintiff and other similarly situated insureds to rely on the information.

13. On or about June 8, 2017, Plaintiff while driving her 2006 Chevrolet Malibu which contained a 4-cylinder motor (hereafter "Malibu 4-cylinder") was involved in an accident resulting in a total loss claim. The Malibu 4-cylinder had approximately 97,923 miles at the time of the total loss.

14. On or about June 13, 2017, Progressive, utilizing the Mitchell WorkCenter program/software paid $4,048.85 to settle Plaintiff's total loss to her Malibu 4-cylinder on Progressive Claim No. 17-3529731-01.

15. On or about June 13, 2017, Plaintiff purchased another 2006 Chevrolet Malibu with a 6-cylinder motor (hereafter "Malibu 6-cylinder").

16. On or about July 4, 2017, Plaintiff while driving her Malibu 6-cylinder was involved in an automobile accident which resulted in a total loss, Claim No. 17-4035104-01. The Malibu 6-cylinder had less than 67,000 miles at the time of the total loss.

17. On or about July 5, 2017, the Defendant determined that the actual cash value of Plaintiff's Malibu 6-cylinder was $4,282.54 utilizing the Mitchell WorkCenter program.

18. The difference in price determined by Progressive for Plaintiff's two (2) total loss vehicles was $196.69, even though one was 4-cylinder car with over 97,000 miles and the other was a 6-cylinder car with less than 67,000 miles.

19. Plaintiff objected to the "comparable vehicles" that Defendant used to determine the actual cash value of her July 4th Malibu 6-cylinder total loss. Specifically, the Plaintiff's vehicle had less than 67,000 miles at the time of loss while the five vehicles that Defendant identified as "comparable vehicles" had mileages of 97,509; 140,334; 163,391; 175,247; and 187,955 respectively. At least one of the "comparable vehicles" utilized by Defendant had been reported as a "total loss."

20. The Projected Sold Adjustment for four (4) of the "comparable vehicles" provided by Progressive to Plaintiff all reflect a monetary deduction shown as a percentage reduction of: 10.50%; 10.50%; 10.54%; and 10.50%. Thus, Progressive automatically deducted 10.5% of the

price of their supposed "comparable vehicles" which reduces Plaintiff's recovery under the policy. This off the top reduction to the price of the four (4) "comparable vehicles" resulted in a savings to Progressive of: $348.00; $362.00; $310.00; $334.00. Upon information and belief, Plaintiff believes that Progressive employs this practice across all members of the proposed class.

21. On or about July 6, 2017, the Plaintiff provided the Defendant with a printout copy of a NADA value for her Malibu 6-cylinder which showed a value of $6,125.00, further stating that this amount would be acceptable as settlement for the loss.

22. On July 7, 2017, Defendant provided Plaintiff with their own NADA printout showing Plaintiff's vehicle was valued at $5,912.00. However, the Defendant refused to pay Plaintiff the NADA value of Plaintiff's vehicle or to adjust their valuation of Plaintiff's vehicle.

## COUNT I: BREACH OF CONTRACT

23. Plaintiff incorporates herein by reference the allegations of the proceeding paragraphs of this Amended Petition.

24. Progressive entered into a written insurance contract with Plaintiff and each member of the Class to provide collision and/or comprehensive coverage for the loss or damage to the insured vehicle.

25. Plaintiff purchased and was the named insured on Policy No. 912550710, which insured the Plaintiff's vehicle from the subject loss by comprehensive and collision coverage.

26. Defendant agreed to pay Plaintiff and members of the class for the value of the vehicle if it was as total loss vehicle, based upon the applicable policy language.

27. On or about June 8, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 4-cylinder was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

28. On or about July 4, 2017, while covered under Policy No. 912550710, Plaintiff's Malibu 6-cyliner was totaled in an accident. Pursuant to the terms of the subject Policy, this accident constituted a covered loss.

29. All premiums on the Policy were paid and Plaintiff complied with all provisions of her Insurance Policy.

30. Pursuant to the policy of insurance written and issued to Plaintiff and Class, Defendant had a duty to pay the Plaintiff's losses.

31. That Plaintiff made due demand on Defendant for payment of the policy benefits. Defendant failed to pay the reasonable value for the Malibu 4-cylinder claim. Defendant has refused to pay the benefits due for the Malibu 6-cylinder claim.

32. Defendant wrongfully failed and refused to properly pay Plaintiff and each Class member by failing to base payment to the insured on the "market value, age, and condition at the time the loss occurred" as required by the contract of insurance. This failure results from the use of a "projected sales price" and the use of vague adjustments to reduce the amount payable to insureds.

33. Plaintiff is informed, and therefore believes, that Defendant's practice of failing to properly pay auto property claims utilizing Mitchell WorkCenter to evaluate said claims is a practice that has been employed by Defendant since 2010 and involves underpayment of thousands of claims.

34. As a direct result of the action of Defendant, Plaintiff and all other similarly situated insureds have been damaged by Defendant's breach of contract.

### COUNT II: FRAUD/CONSTRUCTIVE FRAUD/NEGLIGENT MISREPRESENTATION

35. Plaintiff adopts and re-pleads paragraphs 1-34, above, and further alleges as follows:

36. Defendant utilizes a computer program known as Mitchell WorkCenter to evaluate and adjust total loss claims in Oklahoma and various jurisdictions around the country.

37. The Mitchell WorkCenter computer program utilizes a set of reference values that results in outcome oriented, unreasonably low evaluations of total loss claims.

38. Progressive represents to its first party insureds, either directly or indirectly through their agents, that it uses "comparable vehicles" to determine the value of the total loss vehicle. Instead, Progressive employs various schemes by utilizing the Mitchell WorkCenter program to select the 'vehicles' in a manner which allows them to reduce the calculated value they pay for "total loss vehicles." By affirmatively representing to the Insured that they were using comparable vehicles, when Progressive knew or should have known such representation was false, they and their agents misrepresented the essential facts to the first party insured that they were using 'comparable vehicles' in determining the value of the total loss vehicle.

39. Progressive falsely represented to their insureds, including Plaintiff, that the Mitchell WorkCenter evaluation represents fair and reasonable evaluations of total loss claims when they know or should know otherwise.

40. Progressive intentionally and knowingly made false statements to Plaintiff about the value of her cars to induce her to accept a reduced amount on her insurance claims.

41. Progressive either knows or should have known that most insureds, including Plaintiff, seeking insurance benefits are vulnerable, less skilled in the art of negotiation and have neither time nor the resources to engage in protracted litigation against Defendant to obtain the fair value of their total loss claims.

42. Progressive either knows or should know that for the reasons outlined above, many insureds never challenge Progressive's evaluation of their total loss claims and thus, never receive the full value of their claims.

43. On or about July 7, 2017, Plaintiff challenged the evaluation of her Malibu 6-cylinder total loss claim, and Progressive intentionally and knowingly made false statements to Plaintiff that they would not be able to pay her more than shown on the Mitchell WorkCenter evaluation.

44. For the reasons set forth above, Progressive's systematic, company-wide use of the Mitchell WorkCenter computer program to justify unreasonably low evaluations of total loss claims of its insureds, including Plaintiff, has resulted in wrongful profits generated by Progressive through encouraging their employees to make payments on total loss claims that Progressive either knows or should know are less than the fair and reasonable value of those claims.

45. Progressive use of the Mitchell WorkCenter and refusal to pay more than the WorkCenter evaluation is contrary to the policy and Oklahoma law.

46. Progressive's use of the Mitchell WorkCenter program/software to justify their unreasonably low evaluation of the Plaintiff's claim constitutes fraud/constructive fraud/deceit in the Plaintiff's individual case, as well as in the claims of an entire class of similarly situated insureds.

47. Progressive's conduct, through their use of the Mitchell WorkCenter program has resulted in damages for fraud/constructive fraud/negligent misrepresentation to Plaintiff and numerous other policyholders in Oklahoma and around the country.

## COUNT III:  BREACH OF THE DUTY OF GOOD FAITH & FAIR DEALING

48. Plaintiff adopts and re-pleads paragraphs 1-47, above, and further alleges as follows:

49. Progressive has a duty to deal fairly and in good faith with Plaintiff and all of their insureds.

50. Plaintiff made due demand on Defendant for payment of the policy benefits, and met all conditions precedent for payment of those benefits.

51. Defendant owed a duty to Plaintiff, and other similarly situated class insureds, to deal fairly and in good faith. Defendant has breached its duty to Plaintiff, and other similarly situated class insureds. The actions alleged herein violate the Defendant's duty of good faith and fair dealing with the Plaintiff and the entire class of insureds Plaintiff seeks to represent in this matter.

52. Upon information and belief, Plaintiff alleges that it is the corporate goal of the Defendant to increase its profits by reducing, delaying or avoiding the full and fair payment of claims.

53. Upon information and belief, the Plaintiff further alleges that the actions of the Defendant during the handling of her claims and the claims of other insureds were not isolated events, but rather were consistent with approved company-wide practices or policies which reward and encourage the systematic reduction, delay or avoidance of the payment of claims.

54. In its handling of Plaintiff's claims, and those of other similarly situated class insureds, and as a matter of standard business practice in handling like claims, Defendant breached its duty to

deal fairly and act in good faith towards the Plaintiff and other similarly situated class insureds by:

a. Failing and refusing to pay the benefits due to under the Policy;

b. Failing to properly investigate claims;

c. Failing to adopt and implement reasonable standards for the prompt investigation and handling of claims arising under such policies;

d. Withholding payment of the benefits knowing that claims for those benefits were valid;

e. Refusing to honor claims in some instances by knowingly misconstruing and misapplying provisions of the Policy;

f. Refusing to honor claims in some instances by knowingly misconstruing and misapplying standard insurance principles;

g. Knowingly misrepresenting that the Mitchell WorkCenter program/software was using "comparable vehicles" in their evaluations;

h. Knowingly misrepresenting to Plaintiff that Progressive would not be able to pay more than their evaluation utilizing the Mitchell WorkCenter program/software;

i. Intentionally misconstruing and misrepresenting applicable policy provisions;

j. Failing to reasonably construe the facts to applicable Oklahoma law;

k. Not attempting in good faith to effectuate a prompt, fair, and equitable settlement of claims;

l. Forcing Plaintiff, pursuant to their standard business practice, to retain counsel in order to secure benefits Defendant knew were payable;

m. Failing to properly investigate and evaluate any investigation that was performed, including but not limited to, intentionally disregarding the undisputed facts concerning the claim;

n. Unreasonably delaying and denying policy benefits, all in violation of the covenant of good faith and fair dealing and resulting in a financial benefit to Defendant.

55. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiff and all others similarly situated have been damaged.

56. Defendant's conduct was intentional, willful, malicious, and committed in utter reckless disregard of Plaintiff's rights, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## COUNT IV: UNJUST ENRICHMENT

57. Plaintiff adopts and re-pleads paragraphs 1-56, above, and further alleges as follows:

58. As a direct result of Progressive's actions described herein, Defendant received unjust financial and material gains to the detriment of the Plaintiff and the Class.

59. At all relevant times, Progressive collected insurance premiums from Plaintiff and the members of the Class to pay collision and/or comprehensive coverage claims for loss or damage of the insured vehicle.

60. Progressive has been unjustly enriched by wrongfully and fraudulently withholding payment of the full, fair value of each total loss claim made by Plaintiff and members of the Class. It would be inequitable and unjust for Progressive to retain such ill-gotten gains.

61. The unjust enrichment of Progressive by payment of less than the full value of total claims through the use of improper adjustments has caused actual economic damages to the Plaintiff and Class members.

62. As a result of Progressive's unlawful and tortious conduct described herein, Progressive was enriched at the loss and expense of Plaintiff and the Class.

## CLASS ACTION ALLEGATIONS

63. The class representative brings this action pursuant to 12 O.S. §2023, individually and on behalf of all others similarly situated, as a representative member of the following proposed class:

All entities and adult persons domiciled or residing in the State of Oklahoma who purchased an automobile policy from Defendant containing collision and/or comprehensive coverage.

64. The class of Defendant's insureds described herein is comprised of thousands of insureds whose claims for covered damage were under-adjusted in that Defendant failed to properly pay their total loss claims.

65. The members of the class are so numerous that joinder is impractical and would involve thousands of litigants. The exact number and identities of class members are unknown at this time and can be ascertained through appropriate investigation and discovery. Upon information and belief there are thousands of potential class members in Oklahoma who are within the class described above.

66. The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to any other method for the fair and efficient adjudication of this controversy. Common legal and factual questions include, but are not limited to, the following:

   a. Whether Progressive's use of a "projected sales price" to determine the value of a total loss vehicle violates the policy and applicable Oklahoma law;

   b. Whether Progressive's use of non-comparable vehicles violates the policy and applicable Oklahoma law;

   c. Whether Progressive's failure to pay the NADA book value of total loss vehicles violates applicable Oklahoma law;

d. Whether Progressive's Mitchell valuation is "fully itemized and explained in writing for the claimant at the time the settlement offer is made" as required by the policy and applicable Oklahoma law;

e. Whether Progressive's use of the Mitchell valuation and adjustments violates the express terms of its automobile policies which require it to pay the insured the actual cash value of the total loss vehicle;

f. Whether Progressive's use of the Mitchell valuation and adjustments and its intentional failure to fully itemize and explain the valuation of total loss vehicles represents a breach of the covenant of good faith and fair dealing;

g. Whether and in what amount Progressive's use of the Mitchell valuation and adjustments resulted in unjust enrichment to Progressive at the expense of Plaintiff and the Class;

h. Whether and in what amount Progressive is liable to Plaintiff and the Class for actual damages and the amount of such damages;

i. Whether Progressive is liable to Plaintiff and the Class for punitive damages and the amount of such damages.

67. The claims of the class representative and Defendant's defenses to those claims are typical of the claims to be advanced by members of the class and Defendant's defenses thereto. Plaintiff and the proposed Class have suffered a common injury arising out of Progressive's common course of conduct as alleged herein. Upon information and belief, the relevant portions of Progressive's automobile policies issued during the relevant time period are substantially the same for each member of the Class. Upon information and belief, the

Mitchell valuation report provided to Plaintiff and Class valued the vehicles in the same manner, following the same or substantially the same methods and criteria. Thus, the claims asserted by Plaintiff and the proposed Class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

68. Plaintiff will fairly and adequately represent and protect the interests of the class and each of its members. Plaintiff has no interests which conflict with the Class and has retained an attorney who has the ability to fairly and adequately represent the interests of the class.

69. This case will, therefore, meet all requirements of 12 O.S. §2023 and will be appropriate for class certification.

### COMBINED PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff prays for judgment in her favor and against Defendant, Progressive, for:

a) Certification of this matter as a class action pursuant to 12 O.S. §2023;

b) Payment for all contractual benefits for all coverages promised to Plaintiff under the policy of insurance, with interest on all amounts due;

c) Actual, consequential, and punitive damages by reason of Defendant's breach of the duty of good faith and fair dealing which will exceed $10,000.00;

d) Disgorgement of the increased financial benefits derived by Defendant as a result of its wrongful conduct;

e) Pre and post-judgment interest, costs, reasonable attorney's fees; and

f) Any other relief the Court deems just and equitable.

Respectfully submitted,

Jason Waddell, OBA No. 30761
Jason Waddell, PLLC
222 NW 13th Street
Oklahoma City, OK 73103
Telephone:     (405) 232-5291
Facsimile:      (405) 708-7871
Jason@JasonWaddellLaw.com
**ATTORNEY FOR PLAINTIFF**

ATTORNEY'S LIEN CLAIMED
JURY TRIAL DEMANDED