IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RACHEL CURTIS, Individually )
and on Behalf of All Others )
Similarly Situated, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-17-1076-PRW
 )
PROGRESSIVE NORTHERN )
INSURANCE COMPANY, )
 )
    Defendant. )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff's motion to compel Defendant to produce certain documents listed on its privilege log. Doc. 87. Defendant filed a response, Doc. 98, and upon order of this Court submitted the documents in question for in camera review. *See* Doc. 105. This and all pending discovery matters were referred to the undersigned Magistrate Judge for determination pursuant to 28 U.S.C. § 636(b)(1)(A). Docs. 104, 111. The undersigned has conducted an in camera review of the documents in question and grants Plaintiff's motion in part as described below.

I. **Background.**

Plaintiff's claim rises out of Defendant's use of software developed by non-party Mitchell, Inc. Plaintiff claims this use of the Mitchell software results in an undervaluation of the total loss amount due to Progressive policy holders, including Plaintiff. *See* Doc. 33.

The parties have been engaged in discovery as to these claims since January 30, 2018. On August 28, 2018, Defendant submitted its first privilege log. *See* Doc. 88. The parties have subsequently corresponded and held conferences without court intervention regarding Defendant's claims of privilege pursuant to Fed. R. Civ. P. 37. The parties reached some resolution and Defendant has produced additional documents through that process but maintains its claims of privilege over other disputed documents. Defendant submitted a revised privilege log on January 29, 2019. *See* Doc. 93. The parties held a Rule 37 conference on February 8, 2019 regarding the revised privilege log but did not resolve any additional issues. Plaintiff requests production of four separate email chains dated: (1) May 21-23, 2013, Doc. 98, Ex. 7, at 2, Nos. 8-11; (2) June 12-13, 2013, *id.* at 2-3, Nos. 12, 14-18; (3) July 30-31, 2015, *id.* at 5, Nos. 49-50; and (4) January 27, 2017 and February 7, 2017, *id.* at 6-7, No. 69. The relevance of these documents to the claims at issue is undisputed.

## II. Analysis.

Rule 26(b)(1) provides that parties may obtain discovery "regarding any matter, not privileged, that is relevant to the claim or defense of any party. . . ." Thus, to be discoverable under Rule 26, material must be both relevant to a party's claims or defenses and non-privileged.

Federal Rule of Evidence 501 provides that state law controls the application of the attorney-client privilege in this case. *Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 699 (10th Cir. 1998). Under Oklahoma law, the privilege protects confidential communications between an attorney and a client "who consults [the] attorney with a view towards obtaining legal services or is rendered professional legal services by an attorney." Okla. Stat. tit. 12, § 2502(A)(2), (B). To be protected, the communication must be made for the purpose of obtaining legal advice. *Id.* § 2502(B). The party asserting the privilege has the burden of establishing the privileged status of the communication. *Chandler v. Denton*, 741 P.2d 855, 865 (Okla. 1987).

Section § 2502 also provides, in relevant part:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal service to the client:

3

> 1. Between the client or a representative of the client and the client's attorney or a representative of the attorney;
>
> 2. Between the attorney and a representative of the attorney;
>
> 3. By the client or a representative of the client or the client's attorney or a representative of the attorney to an attorney or a representative of an attorney representing another party in a pending action and concerning a matter of common interest therein;
>
> 4. Between representatives of the client or between the client and a representative of the client; or
>
> 5. Among attorneys and their representatives representing the same client.

*Id.* § 2502(B)(1)-(5).

A "representative of the client" is:

> a. One having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client, or
>
> b. Any other person who, for the purpose of effectuating legal representation for the client, makes or receives a confidential communication while acting in the scope of employment for the client[.]

*Id.* § 2502(A)(4)(a)(b). And:

> A communication is "confidential" if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication.

*Id.* § 2502(A)(5).

The party asserting attorney-client privilege or work-product protection has the burden of showing clearly that either or both apply.[1] *Barclays-American Corp. v. Kane*, 746 F.2d 653, 656 (10th Cir. 1984); *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *see, e.g.*, *Leblanc v. Tex. Brine Co., LLC*, No. CIV-16-1026-D, 2017 WL 913801, at *4 (W.D. Okla. Mar. 7, 2017), *appeal dismissed sub nom. Tex. Brine Co., LLC & Occidental Chem. Corp.*, 879 F.3d 1224 (10th Cir. 2018); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004). A general assertion of privilege is insufficient. *Id.* So, with respect to each document, Defendant must show (1) a confidential communication; (2) between privileged persons; (3) made to assist in securing legal advice or assistance for the client.

### A. Communications between Defendant Progressive's management and Defendant's in-house counsel.

The May 21-23, 2013 and June 12-13, 2013 email chains reflect communications between members of Defendant's management and Defendant's in-house counsel. Defendant contends these emails relate to a draft presentation regarding the total loss process that was sent to in-house counsel and other members of management for review and comment. Doc. 98,

---

[1] Defendant asserts work-product protection in parts of its privilege log, *see* Doc. 98, Ex. 7, Nos. 12-18, but Defendant makes no effort to carry its work-product protection burden in the argument section of its opposition to Plaintiff's motion to compel. *See* Doc. 98.

at 22-23. Defendant posits the only relevant inquiry is whether these communications were "made for the purpose of facilitating the rendition of professional legal services to the client." *Id.* at 21 (emphasis deleted) (citing Okla. Stat. tit. 12, § 2502(B)). Defendant states the answer is undisputedly yes and therefore the communications are protected by attorney-client privilege. *Id.* However, Plaintiff maintains "there is no indication that Progressive management was directly seeking legal advice or whether the discussion was regarding business decisions." Doc. 103, at 6.

Plaintiff argues if the communication "was not generated for the primary purpose of obtaining legal advice, but rather was generated in the course of making a business decision . . . As such, it does not come within the gambit of the attorney-client privilege." *Id.* at 7 (quoting *Samson Res. Co. v. Internorth, Inc.,* 1986 U.S. Dist. LEXIS 30971, at *2 (N.D. Okla. 1986)). Plaintiff states these emails go to the core of Plaintiff's claims here and if the entries contain business advice or questions concerning the business of working with the total loss system, then no protection applies.

The Court will consider each potentially privileged email chain in turn.

    1.    **May 21-23, 2013 email chain.**

Defendant states these documents reflect "John Retton, a member of Progressive management, circulating a draft presentation regarding the total

6

loss process to Progressive in-house attorney Tim Kerwin and other members of Progressive Management for review and comment." Doc. 98, at 22; *see id.* Ex 7, Nos. 8-9. Defendant argues the communication was "made for the purpose of facilitating the rendition of professional legal advice from Mr. Kerwin," and the "email chain and draft presentation are therefore properly designated as privileged." *Id.*

Upon in camera review of these documents, the undersigned finds that although Defendant's in-house counsel is copied on the emails, the email sent by Mr. Retton and Ms. Hartel were not sent "for the purpose of facilitating the rendition of professional legal advice" as Defendant argues. Rather, Mr. Retton appears to seek business advice on the draft presentation concerning the total loss process he attaches. And in the second email, dated May 23, 2013, Ms. Hartel responds to Mr. Retton's email, providing additional slides for the presentation. Neither email evinces a request for legal advice and overall the undersigned finds the communications and attachments appear to be business—not legal—in nature, and therefore, are not protected by the attorney-client privilege. *See Leblanc,* 2017 WL 913801, at *4 (W.D. Okla. Mar. 7, 2017) (citing *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 160 (E.D.N.Y. 1994) (stating that the attorney-client privilege "attaches only to legal, as opposed to business, services" and protects communications "made to the attorney acting in her capacity as counsel. If the communication[s] are

7

made to the attorney in her capacity as a business adviser, for example, [they] ought not be privileged."), and then citing *In re Grand Jury Subpoena Duces Tecum*, 731 F.2d 1032, 1037-38 (2d Cir. 1984), and then citing *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir. 1961) (explaining that, to qualify for the privilege, the confidential communication between client and attorney must be made for the purpose of obtaining legal, not business, advice)).

The undersigned acknowledges that it may be the case—though not apparent from the emails—that the communications had both a business and legal purpose. However, as Defendant points out in its response, "communications copying attorneys are privileged if they are 'intended to be confidential and a *dominant* purpose of the communication was to obtain legal advice.'" Doc. 98, at 16 n.5 (quoting *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.,* 852 F. Supp. 156, 163 (E.D.N.Y. 1994)) (emphasis added). "If the communication involves both business and legal issues, the Court must determine the primary or predominant purpose of the communication . . . . If primarily a business purpose, the privilege does not attach and the document must be produced." *Lindley v. Life Inv'rs Ins. Co. of Am,* 267 F.R.D. 382, 391-92 (N.D. Okla. 2010). And, even "[w]here . . . the legal and business purposes of the communication are inextricably intertwined, the entire communication is privileged only if the legal purpose outweighs the business purpose." *Id.* at

392. Here, the undersigned finds the legal purpose of the communications—if any—was not the primary purpose.

The undersigned therefore grants Plaintiff's motion to compel as to the May 21-23, 2013 emails and attachments. *See* Doc. 98, Ex. 7, Nos. 8-11.

### 2. June 12-13, 2013 email chain.

This email chain includes, in total, ten emails between Defendant Progressive's management and at times its in-house attorneys Timothy Kerwin and Huong Vu. Defendant states this email chain reflects "communications between Progressive management and its in-house attorneys Tim Kerwin and Huong Vu that were made for the purpose of facilitating the rendition of legal advice from Mr. Kerwin regarding a regulatory investigation related to Progressive's total loss process." Doc. 98, at 23 (citing *id.* Ex. 7, Nos. 12, 14-18).[2] Plaintiff maintains "there is no indication that Progressive management was directly seeking legal advice or whether the discussion was regarding business decisions." Doc. 103, at 6. Plaintiff argues if the communication "was not generated for the primary purpose of obtaining legal advice, but rather was generated in the course of making a business

---

[2] Defendant has produced the attachment listed at entry number 13 on its privilege log. *See* Doc. 98, at 23 n.7.

decision . . . As such, it does not come within the gambit of the attorney-client privilege." *Id.* at 7.

On its privilege log, Defendant describes these email chains as reflecting "[c]onfidential communications prepared in connection with regulatory investigation at the request of Progressive in-house counsel between Progressive management and Progressive in-house counsel providing information to facilitate the rendition of legal advice regarding total loss process." *See, e.g.*, Doc. 98, Ex. 7, No. 12.

Upon in camera review of these emails,[3] the undersigned finds, however, that for the most part the communications do not contain legal advice or strategy, nor do they disclose client confidences. The first four emails in the chain, each dated June 11, 2013, neither copy nor seem to contemplate or refer to the inclusion or input from counsel. They do request input from various non-legal Progressive employees. When in-house counsel is copied to the fifth and sixth emails in the chain—dated June 12, 2013—the communications again do not seek legal advice or strategy, nor do they disclose any confidential information to aid in the rendering of legal advice. In fact, the decisions

---

[3] For ease of reference, the undersigned will refer to the emails as they appear in **chronological** order at entry number 18 on Defendant's revised privilege log (Tab J in the binder provided to the Court for in camera review), as this email chain is inclusive of all the emails at issue.

mentioned in the emails reflect those made by non-legal Progressive employees and do not reference any legal advice or strategy provided. "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege," *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550-51 (10th Cir. 1995); rather, the "communication between a lawyer and client must relate to legal advice or strategy sought by the client." *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir. 1998). *In re Grand Jury Proceedings,* 616 F.3d 1172, 1182-83 (10th Cir. 2010). That the emails generally communicate potential responses to a regulatory investigation is not sufficient to withhold the documents pursuant to attorney-client privilege.

The Court finds Defendant's assertion of privilege sound as to the seventh and eighth emails in the chain. These two emails—dated June 13, 2013—do reflect "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor" and are therefore protected by the attorney-client privilege. *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 278 (10th Cir. 1983) (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)). The undersigned understands these emails as demonstrating Progressive management and in-house counsel Huong Vu communicating in their capacities as client and attorney in order to seek and provide legal advice to

11

the client. The Court therefore denies Plaintiff's motion to compel as to these two communications between John Retton and Huong Vu, dated June 13, 2013.

The ninth email in the chain—dated June 13, 2013—from John Retton to Progressive management and in-house counsel is not protected by the attorney-client privilege as the message it conveys neither constitutes legal advice, nor tends directly or indirectly to reveal the substance of a client confidence. Similarly, the final email circulated by in-house counsel to Progressive management and employees does not constitute a privileged attorney-client communication. In-house counsel Timothy Kerwin circulates—without added legal advice, strategy, or insight—a document prepared by a non-party. "[W]hen an attorney conveys to his client facts acquired from other persons or sources, those facts are not privileged." *In re Grand Jury Proceedings*, 697 F.2d at 1182-83 (citing *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984), and then citing McCormick § 89 (The "prevailing rule [of the attorney-client privilege] does not bar divulgence by the attorney of information communicated to him or his agents by third persons[, n]or does information so obtained become privileged by being in turn related by the attorney to the client in the form of advice."). Because the document is sent from and to, among others, in-house counsel is insufficient to attach the privilege.

Accordingly, the Court grants Plaintiff's motion to compel as to the emails dated June 12-13, 2013 except for the top email at entry numbers fifteen and sixteen on Defendant's revised privilege log—from John Retton and Huong Vu. *See* Doc. 98, Ex. 7. Defendant is to revise its privilege log to clearly indicate that such documents continue to be withheld due to circumstances described above and to provide redacted documents when produced as part of longer email chains.

### B. Communications between Defendant and Non-party Mitchell, Inc.

The July 30-31, 2015 and January 27, 2017 and February 7, 2017 email chains reflect communications between management and in-house counsel of Defendant and employees and in-house counsel at Mitchell International, Inc.—the non-party vendor of the software Defendant uses to value total loss vehicles in Oklahoma.

In determining whether the attorney-client privilege extends to communications between a client and non-party, the first issue for the Court is whether the non-party, Mitchell, is a "representative" of Defendant such that the disclosure of otherwise privileged information to Mitchell would not destroy the attorney-client privilege. *See* Okla. Stat. tit. 12, § 2502(A)(4)(a)(b). Defendant argues this is the case and that because Mitchell acts as "the functional equivalent of an employee" of Defendant under Oklahoma law, the

13

disclosure of otherwise privileged information to non-party Mitchell does not result in the automatic destruction of the attorney-client privilege. Doc. 98, at 17.

Defendant argues the nature of its relationship with Mitchell supports its assertion of privilege over their communications.[4] Defendant states it licenses WCTL from Mitchell and because Defendant relies on Mitchell employees for their expertise on the products and services Defendant licenses from Mitchell, Mitchell is a representative of Defendant. Doc. 98, at 18. Defendant also states "it is uncontroverted that Progressive Northern relies on Mitchell employees to provide information about WCTL." *Id.* And that this involves "from time to time . . . Progressive Northern's in-house counsel, and other Progressive Northern employees acting at the direction of Progressive Northern's in-house counsel, requesting and sharing confidential information with Mitchell representatives in connection with Progressive Northern's and other Progressive affiliate companies' responses to lawsuits and regulatory

---

[4] Defendant also makes brief reference to a "common legal interest" shared by non-party Mitchell and Defendant's affiliate companies, but does not explicitly raise the common interest doctrine as a separate basis for privilege. Doc. 98, at 19. Addressing Defendant's passing reference to the doctrine, the Court notes Defendant makes no showing that the documents at issue on its privilege log "were made in the course of a joint-defense effort," or "were designed to further that effort." *See Grand Jury Proceedings v. United States,* 156 F.3d 1038, 1042-43 (10th Cir. 1998).

14

investigations." *Id*. at 19. Defendant also argues the confidentiality agreement between the two companies—that "all communications between the two companies reflecting 'product information, specifications and documentation' must be kept strictly confidential," *id*. at 18 (quoting Doc. 100, at 4), demonstrates that Mitchell is a representative of Defendant.

Plaintiff disagrees, arguing the disclosure of any privileged information to Mitchell employees waives such privilege. Doc. 103, at 3-4. Plaintiff argues Mitchell and Progressive are separate and distinct corporate entities. Mitchell employees are not "agents" that are controlled by Progressive but rather are employees of a corporation that does business with Progressive. Mitchell employees are not clients of Progressive's in-house counsel. A non-party sending correspondence and attachments to Progressive employees and in-house counsel regarding business decisions is not "legal services to the client" as contemplated by the plain language of § 2502.

Defendant cites a number of cases that strike the Court as not on point. Defendant argues the communications found to be privileged in these cases are similar to the Mitchell communications—when the non-party recipient of attorney-client communications is "acting as the functional equivalent of an employee of the client." Doc. 98, at 17 (citing *Roda Drilling Co. v. Siegal,* 2009 WL 10676177, at *2 (N.D. Okla. Aug. 11, 2009) (upholding assertion of privilege over communications between defendant and non-party who "acted

15

as an employee or representative" of defendant in connection with the provision of legal advice)). In the cases Defendant cites, the non-party representatives were found to be intimately involved in the client's legal matters, often meeting with the client's in-house counsel alone and attending meetings with outside parties as a stated representative for the client. *See In Re Bieter Co.,* 16 F.3d 929, 939-40 (8th Cir. 1994); *see also Roda Drilling Co.,* 2009 WL 10676177, at *2; *see also A.H. ex rel. Hadjih v. Evenflo Co., Inc.,* 2012 WL 1957302, at *5 (D. Colo. May 31, 2012).

Defendant has failed to show its relationship with non-party Mitchell rises to this level. Based on review of Defendant's arguments and the documents provided in camera, it does not appear that Mitchell employees were "actively involved in furthering [Defendant's in-house counsel [representation of [Defendant]." *See Sundance Energy Okla., LLC v. Dan D. Drilling Corp.,* 2015 WL 348705, at *4 (W.D. Okla. Jan. 26, 2015). Defendant even characterizes its relationship with Mitchell as involving the "requesting and sharing" of confidential information "from time to time." Doc. 98, at 19. And, the communications from Mitchell employees to Progressive management and in-house counsel—on July 30, 2015, January 27, 2017, and February 7, 2017, *see id.*, Ex. 7, Nos. 49-50, 69—consists largely of restatements of its own business practices. While the Mitchell employees are providing information at the request of Defendant's management and in-house counsel in relation to a

16

"regulatory investigation" and regarding "state laws concerning total loss process," *see id.*, in camera review reveals the nature of their responses do not support Defendant's claim that Mitchell employees acted as the "functional equivalents" of employees of the client, Defendant. Rather, the information they provide is typical of that provided between two companies who conduct business with one another.

And, as Defendant admits, Defendant fails to cite any case law and it appears none exists, wherein a court, interpreting Oklahoma's privilege statute's "representative of the client" language, has extended the attorney-client privilege to relationships similar to that between Defendant and non-party Mitchell. As such, the undersigned refuses to do so now and because non-party Mitchell is not a "representative" for purposes of § 2502, the communications between Mitchell and Defendant cannot be withheld based on attorney-client privilege.

The undersigned also notes that upon review of the privilege log summaries and the emails themselves, it is not clear the questioned e-mails could be characterized as a communication made for the purpose of facilitating the rendition of legal advice. The flow of communication between Defendant's in-house counsel and Mitchell employees, while not dispositive, distinguishes this claim of privilege from those the courts have upheld. In the cases cited by Defendant and others reviewed by the Court, the potential waiver of privilege

17

most often involves the client's attorney divulging information to an outside agent of the client in order to further the attorney's representation of the client. Indeed, in reviewing the parties' back-and-forth communications regarding these claims of privilege, the undersigned notes Defendant points to several cases in which several federal courts have pointed to this disclosure *to* third persons.[5] Here, in both email chains at issue, the allegedly privileged information is provided by the third party to Defendant's in-house counsel. As a result, the undersigned notes the nature and substance of these communications, even if non-party Mitchell could be considered a "representative" of Defendant, does not implicate the purpose of the attorney-client privilege, which is "to encourage 'clients to make full and frank disclosure to their attorneys, who are then better able to provide candid advice and effective representation.'" *Lindley*, 267 F.R.D. at 388 (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 130 (2009) and *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

---

[5] *See* Doc. 90, at 6 (citing inter alia *SFF-TIR, LLC v. Stephenson,* 2015 WL 3504882, at *2 (N.D. Okla. June 3, 2015) (protecting communications that were "disclosed to third persons in furtherance of the rendition of professional legal services to the client."), and then citing *Westinghouse Elec. Corp. v. Republic of Phil.,* 951 F.2d 1414, 1424 (3d Cir. 1991) ("When disclosure to a third party is necessary for the client to obtain informed legal advice, courts have recognized exceptions to the rule that disclosure waives the attorney-client privilege.")).

The undersigned therefore grants Plaintiff's motion to compel as to the July 30-31, 2015, January 27, 2017 and February 7, 2017 communications between Defendant and non-party Mitchell. *See* Doc. 98, Ex. 7, Nos. 49-50, 69.[6]

**III. Conclusion.**

As more fully described above, the Court grants Plaintiff's motion to compel as to the following documents:

1. May 21-23, 2013 emails and attachments. *See* Doc. 98, Ex. 7, Nos. 8-11;

2. June 12-13, 2013 emails. *See id.* Nos. 12, 14, 17, 18; and

3. July 30-31, 2015, January 27, 2017 and February 7, 2017 communications between Defendant and non-party Mitchell. *See id.* Nos. 49-50, 69.

The Court denies Plaintiff's motion to compel the emails dated June 13, 2013 located at entries fifteen and sixteen of Defendant's revised privilege log. Defendant is to revise its privilege log to clearly indicate that such documents

---

[6] The Court acknowledges but will not address certain accusations raised in Defendant's response. *See* Doc. 98, at 26-28. Defendant's nearly three pages of summary—even if accurate—do not aid the Court in its present decision. That Plaintiff may or may not have improperly withheld discovery is not now before the Court. The Court advises both parties that it does not entertain such recapitulation of the parties' back-and-forth disagreements as to discovery matters **unless** the issues are being raised for the Court's review, and contain arguments supported by case law and other sources for the Court's consideration.

continue to be withheld due to circumstances described above and to provide redacted documents when produced as part of longer email chains.

IT IS SO ORDERED this 1st day of May, 2019.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE