# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RACHEL CURTIS, Individually and on Behalf of All Others Similarly Situated,<br>　　　　Plaintiff,<br><br>v.<br><br>PROGRESSIVE NORTHERN INSURANCE COMPANY,<br>　　　　Defendant. | )<br>)<br>)<br>)<br>)　Case No. CIV-17-1076-PRW<br>)<br>)<br>)<br>) |

## **ORDER**

Plaintiff Rachel Curtis asks the Court to certify a class of those who were covered by a Progressive automobile insurance policy when a collision resulted in a "total loss vehicle"—a determination made by Defendant Progressive Northern's through use of a certain software system to determine the vehicle's actual cash value.[1] Since Plaintiff has not satisfied the requirements of Fed. R. Civ. P. 23, class certification is denied.

### *Background*

Plaintiff has sued Progressive alleging that its use of the Mitchell International WorkCenter Total Loss program ("WCTL") to determine the base value of vehicles involved in total loss vehicle claims violates Oklahoma law because it sometimes provides lower base values than those from generally recognized industry sources.[2]

Plaintiff believes this to be true because in 2017 she was involved in a total loss

---

[1] *See* Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124).

[2] *Id*. at 5.

1

collision while driving a vehicle covered by a Progressive automobile insurance policy.[3] Progressive used the WCTL program to determine the base value of her vehicle.[4] Plaintiff objected that the actual cash value of the WCTL report assigned to her totaled vehicle was too low. She also objected to the report's methodology, arguing that it arrived at its value by comparing vehicles that aren't comparable to hers.[5] To support her objections, she provided Progressive with a printout of the National Automobile Dealership Association valuation of her vehicle, which was higher than the WCTL value.[6] Progressive stuck to its guns, however, and insisted that Plaintiff would be paid based on the WCTL value.[7]

Plaintiff claims that constitutes a breach of contract, fraud, breach of duty of good faith and fair dealing, and unjust enrichment; she also seeks an injunction.[8] She desires to prosecute her claims on behalf of herself and others similarly situated, specifically a class of:

> All entities and adult persons domiciled or residing in the State of Oklahoma who were covered by an automobile policy from Defendant containing collision and/or comprehensive coverage which resulted in a total loss utilizing the Mitchell Workcenter Total Loss (WCTL) system from July 1, 2010 to the date of notice of class certification.[9]

---

[3] *Id*.

[4] *Id*. at 6.

[5] *Id*.

[6] *Id*.

[7] *Id*.

[8] *See* 3d Am. Compl. (Dkt. 33).

[9] Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124) at 19.

*Standard of Review*

A class action is an exception, not the rule, to the typical structure of lawsuits with individual parties.[10] To implicate this exception, "a party seeking to maintain a class action must affirmatively demonstrate [her] compliance with Rule 23."[11] A plaintiff ultimately bears the burden of showing that the Rule 23(a) requirements—numerosity, commonality, typicality, and adequate representation[12]—are met. Additionally, "'[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).'"[13] "[T]he district court has an independent obligation to conduct a rigorous analysis before concluding that Rule 23's requirements have been satisfied."[14]

*Analysis*

The certification question presented here turns on the commonality and typicality

---

[10] *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations and citation omitted) ("The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.").

[11] *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (internal quotations and citation omitted); *see Wal-Mart Stores, Inc.*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc.").

[12] More specifically, "Rule 23(a) requires the party seeking certification to demonstrate that: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there is a question of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy)." *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1217 (10th Cir. 2013).

[13] *Id.* (quoting *Comcast Corp.*, 133 S. Ct. at 1432).

[14] *Id.* (internal quotation marks and citation omitted).

requirements.[15] The crux of Plaintiff's commonality argument is that Progressive, through its use of the WCTL system, undervalued and underpaid Plaintiff and the putative class for their total loss vehicle claims in violation of Oklahoma law.[16] In other words, Plaintiff argues that Progressive's use of the WCTL system categorically violates Oklahoma law and that this determination can be made on a class-wide basis.

Progressive disagrees, arguing that the alleged common questions revolving around whether its use of the WTCL system violates Oklahoma law or the auto policies of the insureds cannot be answered on a class-wide basis.[17] In Progressive's view, the lawfulness of its use of the WTCL system can only be determined by looking at the unique facts of each class member's individual claim to determine whether the WTCL unlawfully undervalued the claim.[18] For the same reason, Progressive argues that the common questions do not predominate as required by Rule 23(b)(3).

Rule 23's commonality requirement is "easy to misread, since [a]ny competently

---

[15] *Wal-Mart Stores, Inc.*, 564 U.S. at 350, n. 5 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158, n. 13 (1982)) ("We have previously stated in this context that '[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.'").

[16] Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124) at 12–13.

[17] Progressive Northern's Resp. in Opp. to Pl.'s Mot. for Class Cert. (Dkt. 139) at 30–31.

[18] *Id*. at 30.

crafted class complaint literally raises common questions."[19] But what Rule 23 requires is that a plaintiff "demonstrate that the class members 'have suffered the same injury,'" which is not the same as saying "that they suffered a violation of the same provision of law."[20] "A discrete legal or factual question common to the class must exist," which means that the Court can answer the question in a single stroke.[21] Indeed, the commonality requirement exists to ensure that proceeding as a class action will "generate common answers apt to drive the resolution of the litigation."[22]

Here, the Court agrees with Progressive that "the mere raising of a common question does not automatically satisfy Rule 23(a)'s commonality requirement."[23] Instead, the common question must be capable of generating a common *answer* and therefore "*classwide resolution*—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[24] Plaintiff claims that to resolve the common questions stemming from Progressive's use of the WCTL system, "this Court will not need to consider the particulars of any individual member's claim."[25] But the common questions alleged by Plaintiff regard whether use of

---

[19] *Wal-Mart Stores, Inc.*, 564 U.S. at 349 (internal quotation marks and citation omitted).

[20] *Id.* at 349–50 (quoting *Falcon*, 457 U.S. at 157).

[21] *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1195 (10th Cir. 2010) (citing *J.B. ex rel. Hart v. Valdez*, 186 F.3d 1280, 1288 (10th Cir. 1999)).

[22] *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

[23] *Wallace B. Roderick Revocable Living Tr.*, 725 F.3d at 1218.

[24] *Id.* (citing *Wal-Mart Stores, Inc.*, 364 at 350).

[25] Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124) at 17.

the WCTL system violates Oklahoma law or an auto policy term, and the answer to that question is that…it depends.[26] It depends on the particular facts of each case and the valuation rendered by use of the WCTL system in each case. So, answering the "common question" requires separate, individualized inquiries like: (1) Is there a provision in a particular insured's contract that prohibits the use of the WCTL system? (2) Did the use of the WCTL system in a particular insured's total loss claim result in an underpayment in violation of Oklahoma law? (3) What actual cash value factors—purchase price, replacement cost, appreciation or depreciation, age of the vehicle, condition in which vehicle has been maintained, market value[27]—impacted the actual cash value determination of a particular insured's total loss claim?

Progressive's point is thus well-taken that "[t]o prove that Progressive paid (or offered to pay) each putative class member less than the ACV of his or her vehicle, Plaintiff would be required to introduce evidence relating to each of those factors, and Progressive would be entitled to present its own evidence to the contrary."[28] In addition, the WCTL base value calculation for a claim is specific to that claim—it depends on the vehicle's make, model, mileage, options, the prices of comparable vehicles in the area, whether the comparable vehicles in the area have been sold, and then when all this information is

---

[26] *Id.*

[27] *Branch v. Farmers Ins. Co.*, 55 P.3d 1023, 1026; *see Conn. Fire Ins. Co. v. Youngblood*, 184 P.2d 792, 796 (Okla. 1947).

[28] Progressive Northern's Resp. in Opp. to Pl.'s Mot. for Class Cert. (Dkt. 139) at 19.

gathered, the comparable vehicles are averaged.[29] This input data varies from claim to claim and does not always result in a valuation below the relevant NADA value.[30] Thus, while use of the WCTL system may theoretically violate Oklahoma law or an insurance provision in some instances, this determination can only be made after an extremely fact-specific inquiry into a total loss claim. So the answer to the question of whether Progressive's use of the WCTL violated law or contract will not result in a common answer for the purported class, and will require an in-depth look at specific claims, which contravenes the purpose of class litigation.[31]

Plaintiff offers little to support her contention that Progressive's use of the WCTL system categorically violates Oklahoma law other than an exhibit showing that the NADA value of her vehicle is higher than the amount Progressive offered to pay her based on the WCTL calculation. But Oklahoma law does not require Progressive to pay the NADA value on total loss claims;[32] as a result, Plaintiff's contention that damages can easily be

---

[29] *Id.* at 15–16.

[30] *See id.* at 24–27.

[31] Plaintiff argues that an individualized analysis is unnecessary because she disclaims any condition adjustments in the proposed class. *See* Reply (Dkt. 143) at 2. But these condition adjustments necessarily affect the bottom line and the appropriate amount of damages, if any, due to each purported class member. Moreover, they also factor in to whether Progressive awarded the actual cash value to each purported class member as required by Oklahoma law. *See* 36 O.S. § 1111.

[32] 47 O.S. § 1111, which references NADA values, only provides the circumstances in which an insurer or other owner must obtain a salvage title for a total loss vehicle; it does not instruct insurers how to determine actual cash value. *See, e.g.*, *Conatzer v. Am.Mercury Ins. Co.*, 15 P.3d 1252, 1256 (Okla. Civ. App. 2000) (describing 47 O.S. § 1111 as a "statutory mandate regarding acquiring a salvage title"). 36 O.S. § 1250.8 describes how to determine actual cash value and does not require the use of NADA values. *See Branch*, 55 P.3d at 1026 (holding that determining actual cash value requires consideration of all

determined as to each putative class member by subtracting WCTL payments from NADA values is wrong. Plaintiff does not submit to the Court any example of another putative class member whose total loss claim payout was less than the NADA value of the relevant vehicle. Progressive, meanwhile, offers an example of a putative class member that *benefitted* from its use of the WCTL system, receiving more than the NADA value of his vehicle and therefore suffering no legally cognizable injury under Plaintiff's proposed damages calculation method.

Plaintiff also fails to point to a similar provision in either her or any other putative class members' auto insurance contracts that Progressive allegedly breached by relying on the WCTL system.[33] Rule 23 requires more than mere allegations;[34] rather, it places on a plaintiff seeking to certify a class the burden to affirmatively support the request for class

---

relevant factors, including the pre-loss condition of the property); *Youngblood*, 184 P.2d at 795–96 (stating that "values fixed in the Red Book are mere estimates" and looking to whether there was "evidence in the record of the condition of the automobile" in assessing ACV).

[33] Plaintiff alleges that a common question among her and the putative class' claims is whether use of the WCTL system violated the "automobile policies," but she fails to point to a contractual provision in any of the policies at issue, let alone one that is commonly contained in all the policies at issue, that imposed a contractual duty upon Progressive not to use the WCTL system. *See* Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124) at 12. Plaintiff has not identified a recognized legal duty that Progressive could have breached. Plaintiff's breach of contract claim accordingly cannot give rise to the common injury required for class certification by Rule 23(a)(2). *See Soseeah v. Sentry Ins.*, 808 F.3d 800, 810–11 (10th Cir. 2015) (Since "plaintiffs have not identified a single contractual provision in any of the policies at issue, let alone one that is contained in all of the policies at issue, that would have imposed a duty on [defendant] to inform the certified class of the impact of *Weed Warrior* and *Jordan*[,] . . . we conclude that the plaintiffs' breach of contract claim cannot give rise to the common injury required by Fed. R. Civ. P. 23(a)(2) for class certification.").

[34] *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.

certification with evidence demonstrating that Rule 23's requirements have been met.[35] Plaintiff here has offered nothing that satisfies the commonality requirement.

Fed. R. Civ. P. 23(a) also requires the claims or defenses of the representative party to be typical of those of the class. Plaintiff asserts her claims are typical of the class because she "has brought claims against Progressive that arise from the same practice (use of the WCTL system) that gives rise to the claims of the class members."[36] Progressive disagrees on the grounds that (1) Plaintiff's decision to not challenge the condition adjustments to vehicles "is antagonistic to the interests of the other putative class members;" (2) some members of the putative class benefitted from the complained of conduct; (3) it is impossible to adjudicate Plaintiff's claim and apply that result to the putative class members because she hired her own appraiser; and (4) Plaintiff seeks consequential damages for herself but not for the putative class.[37]

Progressive's arguments on this point largely go to commonality and adequacy of representation. But Progressive's argument regarding Plaintiff's valuation of her claim demonstrates lack of typicality. On one hand Plaintiff argues that the putative class members' claims should be valued using the difference between the NADA and WCTL valuations, but on the other, she values her own claim using her hired appraiser's opinion

---

[35] Even if common questions existed, the individualized issues associated with determining actual cash value under Oklahoma law would predominate over any common issues, so Rule 23(b)(3) could not be satisfied. In addition, the claims for breach of contract, fraud, unjust enrichment, and bad faith each require proof of individualized elements that would result in thousands of mini-trials within the requested class action.

[36] Pl.'s Mot. for Class Cert. & Br. in Supp. (Dkt. 124) at 14.

[37] Progressive Northern's Resp. in Opp. to Pl.'s Mot. for Class Cert. (Dkt. 139) at 30–34.

of the actual cash value of her vehicle. And even if the putative class members' damages were evaluated like Plaintiff's, such fact specific, individualized assessments requiring appraiser opinions for each claim would demonstrate lack of commonality. Either way, there is a Rule 23 problem. In sum, "the maintenance of [Plaintiff's] action as a class action [will] not advance 'the efficiency and economy of litigation.'"[38]

### *Conclusion*

Since the commonality and typicality requirements of Rule 23(a) are lacking, Plaintiff's motion for certification (Dkt. 124) is **DENIED** and the hearing on this motion is **STRICKEN**.

**IT IS SO ORDERED this 12th day of May, 2020.**

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[38] *Falcon*, 457 U.S. at 159.