# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

RACHEL CURTIS,                                    )
                                                  )
                          Plaintiff,              )
                                                  )
v.                                                )        Case No. CIV-17-01076-PRW
                                                  )
PROGESSIVE NORTHERN                               )
INSURANCE COMPANY,                                )
                                                  )
                          Defendant.              )

## ORDER

In 2017, Rachel Curtis was involved in two separate accidents that resulted in total loss of her two vehicles. She sued, alleging her insurer's vehicle valuation methodology systemically underpays settlement claims and both breached the contract and violated Oklahoma insurance law. Before the Court now is Progressive Northern Insurance Company's Motion for Summary Judgment (Dkt. 149), Ms. Curtis's Response in Opposition (Dkt. 159), and Progressive's Reply (Dkt. 170). For the reasons set forth below, Progressive's Motion for Summary Judgment is **GRANTED** in full.

### Background

Around June 8, 2017, Ms. Curtis was involved in an accident that resulted in a total loss claim on her 2006 Chevrolet Malibu 4-cylinder vehicle ("4-cylinder Malibu"). At the time, Ms. Curtis was a household member covered by her mother's insurance policy ("the Policy") with Progressive. The Policy limited Progressive's liability for loss to a covered vehicle at: "the lowest of (a) the actual cash value of the . . . property at the time of the loss

1

reduced by the applicable deductible; (b) the amount necessary to replace the . . . property reduced by the applicable deductible; (c) the amount necessary to repair the damaged property to its pre-loss condition reduced by the applicable deductible; or (d) the Stated Amount shown on the declarations page for that covered auto."[1] The "actual cash value" is to be "based upon the market value, age, and condition of the vehicle."[2]

To calculate the actual cash value of totaled vehicles, Progressive used a software program called WorkCenter Total Loss, which was developed by Mitchell International, Inc., and J&D Power and Associates. WorkCenter employs a multi-step process that compares the totaled vehicle to similar vehicles in the local market.[3] For the 4-cyclinder Malibu, WorkCenter examined four comparable 2006 4-cylinder Malibu vehicles located within sixty-six miles of Oklahoma City. Three of the comparable vehicles had not yet sold and thus received a "projected sold adjustment" downward from the list price. The fourth vehicle, which had recently been sold and was listed with only a partial VIN number, did not receive a projected sold adjustment downward. Based on these vehicles and the pre-loss condition of Ms. Curtis's 4-cylinder Malibu, Progressive determine that the totaled vehicle's actual cash value was $4,400.02. After applying deductibles and taxes,

---

[1] Def.'s Mot. for Summ. J. (Dkt. 149, Ex. 4), at 77.

[2] *Id.* at 78.

[3] The WorkCenter Total Loss program determines the totaled vehicle's make, model, year, and configuration; identifies comparable for-sale or recently sold vehicles in the local market; adjusts the prices of comparable vehicles based different mileage or options; applies a "projected sold adjustment" to for-sale comparable cars to account for different between list price and sale price; averages the adjusted value of examined comparable vehicles to reach a "base value"; and adjusts the base value of the totaled vehicle to account for pre-loss condition. *See* Def.'s Mot. for Summ. J. (Dkt. 149), at 9.

Progressive offered Ms. Curtis $4,048.85 to settle the claim. Ms. Curtis accepted this offer and purchased a 2006 Chevrolet Malibu 6-cyclinder ("6-cyclinder Malibu") with the settlement money.

Around July 4, 2017, Ms. Curtis was involved in an accident that resulted in a total loss claim on her 6-cyclinder Malibu. Again, Progressive used the WorkCenter program to calculate the actual cash value of the totaled vehicle. This time, WorkCenter examined five 2006 Chevrolet Malibu vehicles located within sixty-six miles of Oklahoma City. Four of the comparable vehicles had not yet been sold and thus received the projected sold adjustment downward from the list price. The fifth vehicle, which had recently been sold and was listed with only a partial VIN number, did not receive the projected sold adjustment. Based on these vehicles and the pre-loss condition of Ms. Curtis's 6-cyclinder Malibu, Progressive determine that the second totaled vehicle's actual cash value was $4,593.82. After applying deductibles and taxes, Progressive offered Ms. Curtis $4,282.54 to settle the claim. Ms. Curtis rejected this valuation.

Rather than the WorkCenter determination of actual cash value, Ms. Curtis contended Progressive should have paid her $6,125, the expected "clean retail" value of a 2006 6-cyclinder Malibu as listed in the National Automobile Dealers Association ("NADA") guidebook. Ms. Curtis subsequently hired an independent appraiser who suggested an actual cash value of $6,700, based on his personal inspection of the vehicle, the NADA guidebook value, and three comparable vehicles listed for sale in Des Moines, Iowa, Maysville, Kentucky, and Republic, Missouri. After receiving this valuation, Ms. Curtis revised her requested actual cash value payment upward to $6,790.

After the parties failed to resolve their disagreement,[4] Ms. Curtis brought suit alleging breach of contract, breach of the duty of good faith and fair dealing, fraud, unjust enrichment, and a prayer for injunctive relief. All claims were generally predicated on the assertion that Progressive's use of the WorkCenter program systematically undervalued claims and defrauded its policy-holders in violation of the contract and state law. Progressive moved for summary judgment on all counts. Ms. Curtis sought to certify a class, but this Court denied certification and Ms. Curtis filed an interlocutory appeal. The Tenth Circuit affirmed the denial of class certification and the Court now returns to Progressive's pending motion for summary judgment. Jurisdiction is proper under 28 U.S.C. § 1332 as Ms. Curtis is a citizen of Oklahoma and Progressive is a corporate entity incorporated in Wisconsin, and Oklahoma law applies to the analysis of Ms. Curtis's claims in this case.[5]

### *Legal Standard*

Federal Rule of Civil Procedure 56(a) requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[4] T he Policy contained a provision that allowed a dissatisfied claimant to formally challenge a valuation, after which both parties would hire independent appraisers and submit values to an umpire. *See* Def.'s Mot. for Summ. J. (Dkt. 149, Ex. 4), at 97. From the briefs and the record, there is no indication Ms. Curtis attempted to utilize this process.

[5] *See Racher v. Westlake Nursing Home L.P.*, 871 F.3d 1152, 1162 (10th Cir. 2017) ("In diversity cases . . . federal courts must apply state substantive law . . . ."); *Bernal v. Charter Cty. Mut. Ins. Co.*, 209 P.3d 309, 311 (Okla. 2009) ("[I]n automobile vehicle insurance cases . . . . the validity, interpretation, application and effect of the provisions of a motor vehicle insurance contract should be determined in accordance with the laws of the state in which the contract was made . . . .").

the movant is entitled to judgment as a matter of law." In deciding whether summary judgment is proper, the Court does not weigh the evidence and determine the truth of the matter asserted, but instead determines only whether there is a genuine dispute for trial before the fact-finder.[6] The movant bears the initial burden of demonstrating the absence of a genuine, material dispute and an entitlement to judgment.[7] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[8] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.[9]

If the movant carries the initial burden, the nonmovant must then assert that a material fact is genuinely disputed and must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by "showing that the materials cited [in the movant's motion] do not establish the absence . . . of a genuine dispute"; or by "showing . . . that an adverse party [i.e., the movant] cannot produce admissible evidence to support the fact."[10] The nonmovant does not meet its burden by

---

[6] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1251 (10th Cir. 2015).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Anderson*, 477 U.S. at 248; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[9] *Anderson*, 477 U.S. at 248; *Adler*, 144 F.3d at 670.

[10] Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322.

"simply show[ing] there is some metaphysical doubt as to the material facts"[11] or theorizing a plausible scenario in support of its claims. Instead, "the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether is so one-sided that one party must prevail as a matter of law."[12]

## Discussion

*Oklahoma Statutes*

The Court must first address Ms. Curtis's allegation that Progressive's contract and actions "violate[d] applicable Oklahoma" statutes.[13] She contends that Okla. Stat. tit. 47, § 1111 "provides the framework on what Progressive is required to pay on a total loss claim," and that Okla. Stat. tit. 36, § 1250.8 "provides the methods to arrive at a settlement of a total loss vehicle."[14]

Okla. Stat. tit. 47, § 1111 establishes that a vehicle is a total loss when the cost of repairs exceeds "sixty percent (60%) of the fair market value of the vehicle."[15] The statute also defines "fair market value" as "the value of a vehicle as listed in the current National

---

[11] *Neustrom v. Union Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[12] *Neustrom*, 156 F.3d at 1066 (quoting *Anderson*, 477 U.S. at 251–52); *Bingaman v. Kan. City Power & Light Co.*, 1 F.3d 976, 980 (10th Cir. 1993)).

[13] Third Am. Compl. (Dkt. 33), at 16.

[14] Pl.'s Resp. in Opp. (Dkt. 159), at 7–8, 9.

[15] Okla. Stat. tit. 47, §§ 1111(C)(1).

Auto Dealers Association guidebook or other similar guidebook or the actual cash value, whichever is greater."[16]

Okla. Stat. tit 36, § 1250.8(A)(2), the Oklahoma Unfair Claims Settlement Practices Act, covers "Motor vehicle total loss or damage claim" and provides:

> An insurer may elect a cash settlement based upon the actual cost, less any deductible provided in the policy, to purchase a comparable motor vehicle, including all applicable taxes, license fees and other fees incident to a transfer of evidence of ownership, or a comparable motor vehicle. Such cost may be determined by:
>
> a. the cost of a comparable motor vehicle in the local market area when a comparable motor vehicle is currently or recently available in the prior ninety (90) days in the local market area,
>
> b. one of two or more quotations obtained by an insurer from two or more qualified dealers located within the local market area when a comparable motor vehicle is not available in the local market area, or
>
> c. the cost of a comparable motor vehicle as quoted in the latest edition of the National Automobile Dealers Association Official Used Car Guide or monthly edition of any other nationally recognized published guidebook.[17]

The next subsection requires any insurance settlement that "deviates from the methods described in subsection A of this section . . . shall be supported by documentation . . . [and a]ny deductions from such cost . . . shall be measurable, discernible, itemized, and specified."[18]

---

[16] *Id.* §§ 1111(A)(2).

[17] Okla. Stat. tit. 36, § 1250.8(A)(2).

[18] *Id.* § 1250.8(B).

When resolving insurance disputes, Oklahoma law requires that any insurance policy not in compliance with the Oklahoma insurance code "be construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this Code."[19] Ms. Curtis claims that the Policy and subsequent actions violated these statutes in two ways. First, she argues that the Policy, by fixing liability at "the lowest of" various valuation methods, violated Title 47, § 1111's requirement to pay "whichever is greater" from various methods. Thus, according to Ms. Curtis, Progressive should have paid her the "greater" NADA value of $6,125 rather than WorkCenter-derived value of $4,282.54. Second, she argues that Progressive failed to pay the cost of a *singular* comparable vehicle, as required under Title 36, § 1250.8(A)(2)(a).[20] Worse yet, she claims, some of the other vehicles Progressive used as comparators had only partially-viewable VIN numbers—which she calls "phantom" vehicles—that prevented her from confirming the differences in mileage, equipment, and condition. Neither argument is persuasive.

---

[19] Okla. Stat. tit. 36, § 3620; *see also Davis v. Progressive Northern. Ins. Co.*, 288 P.3d 270, 273 (Okla. Civ. App. 2012).

[20] Ms. Curtis also argues that Progressive failed to pay the "actual cost," failed to "obtain quotes from qualified dealers," and failed to "pay the NADA value." *See* Pl.'s Resp. in Opp. (Dkt. 159), at 9. However, these contentions are irrelevant accoutrements of the primary argument that Progressive failed to pay the cost of a comparable vehicle. On failure to pay the actual cost of her vehicles, since the cost of a comparable vehicle is one of the permissible methods of determining actual cost, the two claims are duplicative. Meanwhile, obtaining quotes or paying the NADA value are merely alternative methods to paying the cost of a comparable motor vehicle; since the WorkCenter program relies on the comparable motor vehicle method, consideration of the two alternate methods of determining actual cost is unnecessary.

*First*, Title 47, § 1111's "fair market value" definition doesn't govern in this context. Section 1111 falls within the "Vehicle License and Registration Act" chapter of the Oklahoma "Motor Vehicles" title.[21] The section establishes procedures for determining when a vehicle is a total loss and for returning certificates of title to the Oklahoma Tax Commission after a vehicle has been totaled and will be either salvaged or junked—it does not provide a framework for insurance settlements. The "fair market value" definition of "whichever is greater" from "the value of a vehicle as listed in the current National Auto Dealers Association guidebook or other similar guidebook or the actual cash value" is thus the mechanism to apply when determining whether the vehicle is a total loss. It does not, however, dictate what an insurer must *pay* for a total loss claim. Section 1111 requires Progressive to take the highest of the various potential values and determine if the cost of repair for safe operation exceed 60% of that highest value, and if so, to declare the vehicle a total loss. It does not require Progressive to pay the highest possible value when settling the liability owed under its insurance policies. Thus, section 1111 does not "provide[] the framework on what Progressive is required to pay on a total loss claim," as Ms. Curtis asserts.

*Second*, the Policy complies with the value calculation requirements of section 1250.8. Subsection 1250.8(A)(2)(a) permits Progressive to calculate the actual cash

---

[21] Section 1111 also does not fall in the correct statutory title to be amenable to the "construed and applied in accordance with such conditions and provisions as would have applied had such policy . . . been in full compliance with this Code" requirement of Title 36, § 3620. Section § 3620 refers only to compliance with the Insurance Code, which is contained wholly in Title 36, whereas section 1111 is found in Title 47.

value of a vehicle by examining "the cost of a comparable motor vehicle in the local market area." Ms. Curtis argues that by deriving a value from *multiple* comparable vehicles in the local market, Progressive is violating the singularity aspect of subsection 1250.8(A)(2)(a)'s permitted methodology. But among the traditional tools of statutory interpretation is the semantic canon of numbers, which advises: "In the absence of a contrary indication . . . the singular includes the plural."[22] Here, Progressive's conduct complies with subsection 1250.8(A)(2)(a), and the statute contains no contrary indication foreclosing insurers' compliance via multiple rather than singular. Furthermore, according to the statute itself, unfair claim settlement practices must have been "committed flagrantly and in conscious disregard of this act or any rules promulgated hereunder."[23] Where subsection 1250.8(A) imposing consumer protections by requiring an examination of at least one comparable vehicle in a local market to provide a fair actual cash value of the insured vehicle, rising about this floor of protections by examining multiple comparable vehicles to better provide an accurate valuation cannot be a flagrant violation of the insurance code. Thus, neither the Policy nor Progressive's subsequent use of the WorkCenter program violates section 1250.8.

*Third*, even if Progressive had violated either section 1111 or section 1250.8, neither statute creates a private right of action by which Ms. Curtis may seek to enforce the

---

[22] ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 129 (2012) ("[U]nless context indicates otherwise . . . words importing the singular include and apply to several persons, parties, or things.")

[23] Okla. Stat. tit. 36, § 1250.3.

standards. Enforcement of section 1111 falls to the Oklahoma Tax Commissioner, while enforcement of section 1250.8 falls to the Oklahoma Insurance Commissioner.[24] In *Walker v. Chouteau Lime Company*, the Oklahoma Supreme Court rejected the idea that "there is a private cause of action against an insurer who violates provisions of the Unfair Claim Settles Practices Act."[25] And although Oklahoma courts have not definitively answered whether section 1111 embodies a private right of action, they have provided the governing standard: when a statute "expressly places the right of prosecution in a public entity, there can be no intent to create a private right of action."[26] Since Title 47 "clearly places enforcement in the hands of governmental authorities"—the Oklahoma Tax Commission[27]—"the right of action is exclusively vested in such governmental authority."[28] Thus, even if Progressive had violated either section 1111 or section 1250.8, Ms. Curtis has no private right of action to seek remedy and cannot avoid this proscription by dressing up a prohibited statutory claim as something else.[29]

---

[24] 849 P.2d 1085 (Okla. 1993); *see also Howard v. Zimmer, Inc.*, 299 P.3d 463, 470 n.28 (Okla. 2013) ("No private cause of action against insurer who violates provisions of Unfair Claim Settlement Practices Act where the power to regulate was expressly given to the Insurance Commissioner.").

[25] *Walker*, 49 P.2d at 1085.

[26] *Howard*, 299 P.3d at 470.

[27] Okla. Stat. tit. 47, § 1149 ("It shall be the duty of the Oklahoma Tax Commission, and the Tax Commission is hereby granted authority and jurisdiction to administer this act . . . .").

[28] *Oklahoma ex rel. Okla. Bar Ass'n v. Mothershed*, 264 P.3d 1197, 1227 (Okla. 2007).

[29] *See Morgan v. Valley Ins. Co.*, 2009 WL 1683787, at *1 (W.D. Okla. June 12, 2009) ("[T]he Tenth Circuit has rejected the argument that, because existing law is part of every contract, a violation of the [Unfair Claims Settlement Practices] Act may be asserted under

Accordingly, the Policy does not violate either Title 47, § 1111 or Title 36, § 1250.8, and even if it did, Ms. Curtis wouldn't have a private right of action.

*Summary Judgment*

While the Oklahoma statutes don't control the outcome, Ms. Curtis also raises claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, unjust enrichment, and a prayer for injunctive relief. The Court considers each in turn.

(1)    Breach of Contract

Insurance policies are "contracts interpreted as a matter of law."[30] Parties "contract for risk coverage" and will be "bound by policy terms."[31] Courts apply the contract as written and do "not rewrite an insurance contract to benefit either party."[32] For this breach of insurance contract claim, Ms. Curtis must prove: (1) the formation of a contract, (2) a breach of that contract, and (3) damages suffered as a result of the breach.[33] The Court concludes summary judgment for Progressive is warranted on this claim, since based on the evidence in the record, Ms. Curtis cannot prove she was entitled to more than Progressive's actual cash value offer.

---

a contractual theory. . . . The Oklahoma Supreme Court would not permit a contractual recovery for an alleged violation of the Act.")

[30] *BP Am., Inc. v. State Auto Property & Cas. Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005); *see also Dodson v. Saint Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991).

[31] *BP Am.*, 148 P.3d at 835.

[32] *Id.*; *see also Avenmo Ins. Co. v. White*, 841 P.2d 588, 590 (Okla. 1992) ("[W]e will not rewrite the policy's terms simply because doing so would favor the insured.").

[33] *See Wheeler's Meat Market, Inc. v. Travelers Casualty Ins. Co.*, 2018 WL 11184650, at *2 (W.D. Okla. Feb. 21, 2018) (citing *Dig. Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843

The contractual provision in question promises to pay the vehicle's "actual cash value based upon the market value, age, and condition of the vehicle." The Policy further notes that this value calculation may involve "estimating, appraisal, or injury evaluation systems" and "may include compute software, databases, and specialized technology."[34] The crux of Ms. Curtis's breach of contract claim is that this provision guaranteed her either the NADA "clean retail" valuation or her private appraiser's estimated value. But as Progressive correctly observes, no provision in the Policy guarantees a right to the NADA value, a private appraiser's value, or the greatest of potential estimated values.

Ms. Curtis responds that the Policy is governed by *Connecticut Fire Insurance Company v. Youngblood*,[35] an Oklahoma Supreme Court case from 1947. In *Youngblood*, "actual cash value" meant what the vehicle would "bring in a fair market after reasonable efforts to find a purchaser who will give the highest price."[36] So in Ms. Curtis's eyes, Progressive is obligated to pay her the "actual cash value" of her vehicles, meaning the "fair market value," meaning presumably either the NADA clean retail value of §6,125 or the private appraiser estimate of $6,790. But *Youngblood* predated the enactment of the Oklahoma Uniform Claim Settlement Practices Act, so the legal weight of the *Youngblood* value scheme has since been displaced by Title 36, § 1250.8, with which the Policy complies. And even if *Youngblood*'s "fair market value" standard applied, Ms. Curtis

---

[34] *See* Def.'s Mot. for Summ. J. (Dkt. 149, Ex. 4), at 101.

[35] 184 P.2d 792 (Okla. 1947).

[36] *Youngblood*, 184 P.2d at 229 (quoting Black's Law Dictionary, 3rd ed.).

advances no arguments why the NADA value or private appraiser estimate is the fair market value instead of the WorkCenter program's actual cash value.

Ms. Curtis is thus left with the sole contention that the WorkCenter program's value is not the "actual cash value," and instead either the NADA value or the private appraiser estimate is the real actual cash value.[37] This alone is insufficient to demonstrate breach of the contractual provision. Value appraisal is not an exact science[38] and even Ms. Curtis's own appraiser admitted equally qualified appraisers "can reach different opinions about the value of a vehicle."[39] Here, the Policy stated the actual cash value would be calculated by considering the "market value, age, and condition of the vehicle at the time the loss occurs" and "estimating, appraisal, or injury evaluation systems" that "may include computer software, databases, and specialized technology."[40] From the record, it appears that Progressive did just that—using the WorkCenter software program to gather estimates and appraisals of comparable vehicles in local markets, and adjusting the actual value based on the age, mileage, and condition of Ms. Curtis's vehicles.

---

[37] Progressive believes Ms. Curtis also challenges the "comparable" vehicles under her breach of contract claim. Whether this was originally true or not, Ms. Curtis appears to have abandoned this argument under breach of conflict so she could maintain the argument under her bad faith claim without being duplicative. *See* Pl.'s Resp. in Opp. (Dkt. 159). Thus, the Court deals with her challenges to the comparable vehicles under those claims. To the extent that Ms. Curtis did intend to challenge the comparable vehicles under breach of contract, the Court reasoning on this issue as it pertains to the other claims would apply here as well, so the Court would still find no breach of contract.

[38] *See Sinclair Wy. Refining Co. v. Infrassure, Ltd.*, 970 F.3d 1317, 1324 (10th Cir. 2020).

[39] Bauer Dep. (Dkt. 149, Ex. 7), at 61.

[40] Def.'s Mot. for Summ. J. (Dkt. 149, Ex. 4), at 101.

Ms. Curtis alleges no deviations from the method described by the Policy. She has identified no authority that requires she be paid either the NADA value or the private appraiser estimate. And she has not presented evidence indicating how the WorkCenter value violates the express terms of the contract, instead merely contending she deserves more. But simply because certain outcomes might have benefited Ms. Curtis more does not, standing alone, demonstrate a breach of the contract. Accordingly, there are no genuinely disputed material facts, Progressive has not breached the contract, and Progressive is entitled to judgment as a matter of law on the breach of contract claim.

(2)     Breach of the Duty of Good Faith and Fair Dealing

Turning to Ms. Curtis's bad faith claim, it is well established that "an insurer has an implied duty to deal fairly and act in good faith with its insured" and "the violation of this duty gives to an action in tort."[41] Ms. Curtis argues that Progressive engaged in bad faith on two fronts. First, by misrepresenting that the comparable vehicles were "identical" when they actually differed in mileage, condition, and options. And second, by misrepresenting as comparable vehicles some vehicles that displayed only partial VIN numbers.[42]

---

[41] *Christian v. Am. Home. Assur. Co.*, 577 P.2d 899, 904 (Okla. 1977).

[42] These two contentions are functionally the same allegations raised throughout Ms. Curtis's various complaints and appear again in her claim for fraud, so the Court will examine these two contentions in full as pertaining to fraud. Ms. Curtis also alleged that Progressive engaged in bad faith since it declined to pay her idea of "fair market value" despite "clear precedential authority" to do so. Pl.'s Resp. in Opp. (Dkt. 159), at 16. However, as the Court held when resolving the breach of contract claim, the precedent Ms. Curtis cited is not binding and does not dictate the result she desires.

However, the absence of any one element defeats a bad faith claim,[43] and one of the elements of bad faith is that the insurer unreasonably did not pay a claim in full.[44] Accordingly, a party must establish breach of the insurance contract in order to maintain a related bad faith claim. Ms. Curtis seeks to avoid this conclusion by citing one case to the contrary, *Vining v. Enterprise Financial Group*,[45] where the Tenth Circuit observed that no Oklahoma court had yet held that "an insured must actually prevail on a separate underlying breach of contract claim in order to maintain a successful bad faith claim."[46] Yet *Vining* was decided in 1998. Cases decided after *Vining* establish that a plaintiff must establish a breach of the underlying contract in order to maintain a bad faith claim, since "a determination of liability under the contract is a prerequisite to a recovery for a bad faith breach of an insurance contract."[47] Accordingly, since Ms. Curtis failed to establish that Progressive breached the insurance contract, Progressive is entitled to summary judgment on the bad faith claim.

---

[43] *Beers v. Hillory*, 241 P.2d 285, 292 (Okla. Civ. App. 2010); *see also Edens v. The Netherlands Ins. Co.*, 2015 WL 1285905, at *4 (N.D. Okla. Aug. 31, 2015).

[44] *See Toppins v. Minnesota Life Ins. Co*, 460 F. App'x 768, 771 (10th Cir. 2012) (quoting *Beers*, 241 P.3d at 292).

[45] 148 F.3d 1206 (10th Cir. 1998).

[46] *Id.* at 1214.

[47] *Davis v. GHS Health Maint. Org., Inc.*, 22 F.3d 1204, 1210 (Okla. 2001); *see also Davis v. Fed. Ins. Co*, F. Supp. 3d 1189, 1199 (W.D. Okla. 2019) ("As Plaintiffs cannot establish breach of the insurance contract, Defendant is also entitled to summary judgment on Plaintiffs' bad faith tort claim."); *Edens*, 2015 WL 1285905, at *4 (same).

(3)    Fraud/Constructive Fraud/Negligent Misrepresentation

Ms. Curtis also generally alleged that Progressive engaged in either actual fraud, constructive fraud, or negligent misrepresentation. Under Oklahoma law, the elements of actual fraud are: (1) a material misrepresentation, (2) known to be false at the time made, (3) made with specific intent that a party would rely on it, and (4) the party relied on the material misrepresentation to their detriment.[48] Constructive fraud, or negligent misrepresentation, requires largely the same elements, but "does not necessarily involve any moral guilty, intent to deceive, or actual dishonesty of purpose."[49]

Although under Oklahoma law, "a claim for fraud must be distinct from a claim for breach of contract,"[50] here Ms. Curtis constructed her pleadings to maintain a distinct claim separate from the breach of contract claim. Namely, she argues that Progressive materially misrepresented "that they were using identical comparable vehicles on her claims,"[51] but the comparable vehicles not identical, as they differed in mileage, condition, and options. For support, Ms. Curtis cites the WorkCenter report, which stated: "The comparable vehicles are identical to the loss vehicle except where adjustments are itemized."[52]

---

[48] *See Key Finance, Inc. v. Koon*, 371 P.3d 1133, 1137 (Okla. Civ. App. 2015) (citing *Bowman v. Presley*, 212 P.3d 1210, 1218 (Okla. 2009)).

[49] *Id.* at 1138; *see also Croslin v. Enerlex, Inc.*, 308 P.3d 1041, 1046 (Okla. 2013).

[50] *Edwards v. Farmers Ins. Co.*, 534 P.2d 679, 681 (N.D. Okla. Nov. 24, 2009) (citing *Fox v. Overton*, 534 P.2d 679, 681 (Okla. 1975)).

[51] Pl.'s Resp. in Opp. (Dkt. 159), at 27.

[52] Def.'s Mot. for Summ. J. (Dkt. 149, Ex. 4), at 10.

According to Ms. Curtis, this material misrepresentation was known to be false and used to induce her to accept a lower settlement than her vehicles were worth.

Setting aside that Ms. Curtis never accepted the settlement offer for the 6-cyclinder Malibu and therefore never relied to her detriment, there was no material misrepresentation. It is true, the vehicles examined to arrive at the WorkCenter value were not identical to Ms. Curtis's vehicles. But Progressive never promised that they would be—the representation in question explicitly noted "comparable vehicles are identical . . . except where adjustments are itemized," and that itemized adjustments would be made to each compared vehicle "to reflect consumer purchasing behavior," for "differences in configuration," "differences in mileage," and "differences in equipment."[53] This alone undercuts the notion that Progressive claimed it used identical vehicles. The comparable vehicles examined by the WorkCenter program were the same make, model, and year as Ms. Curtis's vehicles, and the report itemized all value adjustments made for each vehicle's particular differences.[54]

Progressive promised to compare identical vehicles except for certain defined exceptions, and it examined vehicles that were indeed identical except for differences within the defined exceptions.[55] Accordingly, there is no genuine dispute of material fact

---

[53] *Id.*

[54] *See id.* at 6–9.

[55] Ms. Curtis also spends some time arguing that two of the comparable vehicles examined in the report for her 6-cylinder Malibu were sold for pennies on the dollar prior to be listed for sale at the price recorded in the WorkCenter report. This neither shows that the vehicles were substantively different nor contravenes the stated methods of the WorkCenter

regarding the representation made, Progressive made no material misrepresentation, and Progressive therefore entitled to summary judgment on Ms. Curtis's assortment of fraud claims.[56]

### (5)    Unjust Enrichment

In her Third Amended Complaint, Ms. Curtis also raised a claim of unjust enrichment, contending Progressive "received unjust financial and material gains to the detriment of the Plaintiff . . . by payment of less than the full value of total loss claims."[57] Unjust enrichment occurs when a party "has money in its hands that, in equity and good conscience, it should not be allowed to retain."[58] The Oklahoma Supreme Court has observed that the commonly-recognized elements of unjust enrichment are: (1) the unjust, (2) retention of, (3) a benefit received, (4) at the expense of another.[59] However, given the Court's conclusion that Progressive did not breach the contract and Ms. Curtis has no right or entitlement to the higher NADA value or private appraiser estimate for her vehicle, the

---

program, which examines the price at which a vehicle is currently listed for sale, not whatever price the vehicle might have been sold for previously.

[56] In her Response in Opposition to Progressive's Motion for Summary Judgment, Ms. Curtis did not reallege the other contention from her bad faith claim—that Progressive misled her by examining "phantom" vehicles that only had partial VIN numbers—under her assorted fraud claims. *See* Pl.'s Resp. in Opp. (Dkt. 159), at 26–27. Even if she had not failed to make this argument here, she would still fail to prove fraud, as the vehicles with partial VIN numbers were the vehicles sold within the previous ninety days—as permitted by Title 36, § 1250.8(A)(2)(a)—and Progressive did not reveal the full numbers due to contractual obligations and protection of buyers' privacy. *See* Def.'s Reply (Dkt. 170), at 7.

[57] Third Am. Compl. (Dkt. 33), at 14.

[58] *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006).

[59] *Okla. Dep't of Sec. ex rel. Faught v. Blair*, 213 P.3d 645, 658 (Okla. 2010).

Court cannot conclude that Progressive has been unjustly enriched by not paying Ms. Curtis her preferred value. Furthermore, the unjust enrichment claim is barred by law since Ms. Curtis's only method of providing unjust behavior is by proving Progressive failed to pay the full value of the insurance claim, but such behavior would also have been a breach of the contract and "a party is not entitled to pursue a claim for unjust enrichment when it has an adequate remedy at law."[60] Accordingly, the Court finds that Progressive is entitled to summary judgment on the unjust enrichment claim.

(6)    Injunctive Relief

Finally, Ms. Curtis sought some form of non-specified injunctive relief against Progressive. As Progressive noted, this claim is "[q]uixotic" because the only possible remedy to address Ms. Curtis's injuries is money damages. However, since the Court found that Progressive is entitled to summary judgment on all other claims, Ms. Curtis is not entitled to any relief, injunctive or otherwise.

### Conclusion

Since the statutes Ms. Curtis invokes are inapplicable to resolution of this case, Progressive has carried its burden and demonstrated there is no genuine dispute of material fact and it is entitled to summary judgment on all claims as a matter of law. Ms. Curtis has failed her rebuttal burden and has not pointed to materials in the record sufficient to resurrect a genuine dispute or prove a question of fact that need be submitted to a jury. At

---

[60] *Am. Biomed. Grp., Inc. v. Techtrol, Inc.*, 374 P.3d 820, 828 (Okla. 2016). Ms. Curtis cites two cases in an attempt to evade this bar, but both cited cases were decided before *American Biomedical* and fail to persuasively distinguish the rule.

best, Ms. Curtis has metaphysical doubts about Progressive's methods and offers nothing more than a plausible scenario why she should have been paid more. Accordingly, the Court finds that Progressive must prevail as a matter of law and Progressive's Motion for Summary Judgment (Dkt. 149) is **GRANTED IN FULL**.

 **IT IS SO ORDERED** this 11th day of January 2022.

          _____
          PATRICK R. WYRICK
          UNITED STATES DISTRICT JUDGE